[No. 24272. Department One. May 17, 1933.]

ORAL A. CHAPIN, *Respondent*, v. WILLIAM E. STICKEL *et al., Appellants.*[1]

[1]Reported in 22 P. (2d) 290.

*La Berge, Cheney & Hutchinson* and *Shank, Belt & Rode,* for appellants.

*Snively & Bounds, Robert J. Willis, O. R. Schumann,* and *Don M. Tunstall,* for respondent.

MILLARD, J.—This action was brought to recover for personal injuries sustained by the plaintiff as the result of the collision of a truck with an automobile owned and operated by the defendants. From the judgment on the verdict in favor of the plaintiff, motions for judgment notwithstanding the verdict and for a new trial having been overruled, the defendants appealed.

It is contended that the evidence was insufficient to take the charge of negligence against the appellants to the jury; and that respondent's negligence contributed to his injuries to such a degree as to require the court to hold, as a matter of law, that it barred his right of recovery.

The facts, which are summarized as follows, clearly raised for the determination of the jury a question of primary negligence, and obviously precluded the application of the exception (determination by the court of the question of contributory negligence only when

176

but one reasonable conclusion can be reached from a given state of facts) to the rule requiring the submittal to the jury of the question of contributory negligence:

The accident out of which this controversy arose occurred in the twilight (about nine p. m.) of August 10, 1931, between Parker and Wapato on the gravel road running southeasterly from Yakima to Wapato, a distance of fourteen miles. Respondent was proceeding in a Dodge truck from Yakima towards Wapato. Upon this truck was a flat platform, which was utilized for hauling baled hay and other farm products. The platform extended laterally about ten inches beyond the wheel hubs, and extended approximately two feet to the rear of the tail light underneath the truck. The illumination equipment of the truck consisted of headlights and tail light. Those lights were functioning long prior to, and at the time of, the accident.

Respondent's supply of gasoline was exhausted when approximately one mile south of the town of Parker. Respondent examined the gasoline tank under the seat, "started back to Parker to get more gas," and upon arrival at the rear of his truck, he "noticed a car coming from the direction of Parker toward Wapato, and I stopped there and waited, thinking possibly I could hail them and get some gas." The approaching car was a Ford truck, operated by one Billingsley, who was accompanied by his father. Not having the means with which to supply gasoline to the respondent, the Billingsleys agreed to tow respondent's truck to Wapato.

By means of a tow chain with a hook on either end thereof, the two trucks were connected. The Billingsleys remained in their truck, and the respondent rode in, and steered, his truck. They thus pro-

ceeded for three or four miles, when, as a truck came out on an intersecting road from the east, the speed of the Billingsleys' truck was lessened to grant the right of way to that truck. The tow chain slackened and "came unhooked." The elder Billingsley remained in the towing truck. The younger Billingsley, with respondent, proceeded to pull back the Billingsley truck a distance of two or three feet in order to again connect the two trucks with the tow chain.

After making the connection, Billingsley stepped over to the left side of respondent's truck. "I was standing on the left side of the truck in front of the wheel and the wheel ran over my foot." While Billingsley was in that position and respondent was between the two trucks, a Buick automobile operated by appellant husband collided with the rear of respondent's truck, which was shoved ahead upon respondent, thereby injuring him. The accident happened at a point described by respondent's witnesses as "no curve," but "just a bend in the road."

There was competent evidence warranting the jury in finding that, had appellant husband been properly observant, he could have seen the respondent's truck in sufficient time to have avoided the collision. There was testimony that the Buick automobile was proceeding at the rate of forty miles an hour. North from the point of the accident one could see a vehicle more than one mile distant. The headlights on appellants' automobile were burning. The tail and headlights of respondent's truck supplied the illumination required by the statute. Without an interfering obstruction, appellant driver testified that he could see a distance of two hundred feet, but, even with the dust appellants insisted was present, the driver could see an object one hundred and fifty feet ahead of him on the road.

Appellant driver testified that he did not see re-

178

spondent's truck until he was twenty or thirty feet distant therefrom. That driver was then traveling at the rate of forty miles an hour. He explained that his failure to earlier observe respondent's truck was because of a curve back of respondent's truck about seventy-five feet, and that his vision was obscured by dust and by the lights of an automobile coming in ahead of him on the intersecting road from the east. The testimony respecting the presence of a curve, the presence of dust and the presence of another automobile was controverted, thus presenting a question of fact for the determination of the jury.

■ There was ample evidence to sustain the verdict that the appellants had sufficient time, had they looked, to have seen and have avoided the truck of respondent. Had appellant driver exercised the required degree of care, he could have seen the tail light on respondent's truck when it was more than two hundred feet south of the offending automobile. Appellants will not now be heard to say that they did not see an object which they plainly could have seen had they looked. "The situation is the same as though he had looked and seen the object." *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784.

Under appellant's theory that the presence of a curve precluded a view of respondent's truck until they were within thirty feet thereof, appellants convict themselves of negligence. The statute (Rem. Rev. Stat., § 6362-41, subd. 7) requires the operator of a vehicle, when approaching any curve of a highway upon which he is traveling "where for any reason a clear view for a distance of three hundred feet cannot be had, to hold such vehicle under control." Under appellant driver's own testimony, the driver did not have a clear view for a distance of three hundred feet, yet he proceeded at the rate of forty miles an hour

until within thirty feet of the respondent's truck. He approached the curve without regard to any caution imposed upon him by the statute respecting other vehicles on the other side of the curve. That constituted negligence. As said in *Linville Brothers v. Bliesner,* 133 Wash. 677, 234 Pac. 1019:

"It seems reasonably clear that, if the automobile had been driven, as it came around the curve, so that it was under proper control, there would have been no occasion for the accident."

The links in the chain of respondent's carelessness constituting contributory negligence, as a matter of law, are, insist appellants:

Respondent permitted his supply of gasoline to become exhausted. His explanation that his tank, if full, held enough for operation of the truck a distance of one hundred twenty miles, and he had traveled less than sixty miles the day of the accident, "only shows his carelessness." In coupling his truck to the towing truck, the respondent should have seen to it that the chain was so fastened (a knot should have been made in the chain or the connection should have been wrapped with a piece of bailing wire) that, if the tension on the chain slackened, the hook would not "fall off—just as it did fall off the first time that the towing truck checked its speed." When respondent's truck was being towed, it became a trailer, therefore should have been equipped with the sidelight required by the statute:

"Side lights on long vehicles or combinations of vehicles having gross or overall lengths in excess of 20 feet, shall at the time and under the conditions specified herein carry at the left side and near the rear thereof a rear or tail light capable of exhibiting at any time, a red light towards the rear and a white light towards the front; both of which lights shall be plainly visible under normal atmospheric conditions

for a distance of 500 feet. Except in cases of vehicles disabled between the corporate limits of cities and/or towns and being removed directly from the place and where the same were disabled, all vehicles being towed shall exhibit the side lights as required in this section." Rem. Rev. Stat., § 6362-28.

Another omission of respondent urged as contributory negligence is that respondent went between his truck and the towing truck to couple the two trucks, and did not require either the elder or younger Billingsley to look out for and flag oncoming traffic.

*Keller v. Breneman,* 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92, cited by appellants, does not sustain their contention that the stalling of an automobile caused by exhaustion of supply of gasoline *ipso facto* constitutes contributory negligence as a matter of law. The following language in the case cited was not necessary to the decision:

"His first act of negligence was in operating it over the highway in a condition to become stalled for want of a sufficient supply of gasoline."

While in the case cited, the operator may have been negligent in driving a truck on the highway at night without a sufficient supply of gasoline to prevent stalling of the truck on the highway, the proximate cause of the driver's injury was his contributory negligence after he left his truck and became a pedestrian. He was struck, while walking in the center of the highway, at a curve, in violation of the statute (Rem. Rev. Stat., § 6362-41, subd. 6) which required pedestrians, during the twilight hours, to walk on the left side and step off the traveled portion upon meeting a car. The cause of the stalling of respondent's truck was not the lack of gasoline, but was the slackening of the tension of the tow chain when the towing truck reduced its speed to permit intersecting traffic to enter upon the

highway. In any event, whether or not the respondent exercised the required degree of care in permitting the supply of gasoline to become so low that his truck was stalled on the highway, was a question of fact for determination of the jury.

██ The contention that the manner in which respondent fastened the tow chain constituted negligence merits scant notice. Appellants argue that, had the respondent used baling wire as an aid to the tow chain and that, if he had made a knot in that chain, the accident might have been averted. It may be, as appellants urge, that such precautionary measures would have prevented the accident. It should be borne in mind, however, that negligence on the part of respondent would not be established by showing that he would not have been injured had he used bailing wire or knotted the tow chain as suggested. Such measures were not shown to have been generally adopted in the use of tow chains.

On this issue of negligence, the respondent proved that he conformed to the usage or practice of others in the performance of the same act; that is, the customary and usual method of fastening such a chain was the method employed by the respondent. The testimony was clear that it was a rare occurrence for a tow chain fastened as in the case at bar to become detached. The tow chain was an appliance or device designed for use in towing automobiles, and was such as was in general use. Such tow chains had uniformly, when used as respondent utilized the one in question, answered the purpose for which they were designed. It cannot be held that respondent was negligent and did not act with ordinary prudence in failing to anticipate the unhooking of the tow chain while same was used in the customary and approved manner.

██ We may concede, for the sake of argument,

182

that the respondent's truck, though same was incapable, because of lack of gasoline, of being moved without power, was not, under the statute (Rem. Rev. Stat., § 6362-28), "disabled," therefore was required, while being towed, to carry a side light. Though we concede that it is negligence in itself to violate a positive rule of the statute, nevertheless "negligence on the part of an injured person is not a bar to a recovery against a person injuring him unless his negligence in some degree contributed to the injury." *Keller v. Breneman*, 153 Wash. 208, 279 Pac. 588, 67 A. L. R. 92.

■ Appellants complain of instruction No. 20, on the doctrine of "last clear chance." The court charged the jury that, if the appellant driver actually saw the truck of the respondent and should have appreciated the danger of the situation, and failed to exercise reasonable care to avoid the collision, the jury should find for the respondent, although the respondent was "guilty of negligence that continued up to the instant of the injury." The court further instructed the jury that, if the appellant driver did not actually see the peril of the respondent in time to have avoided the injury,

". . . but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency he was driving and the situation then and there existing, should have seen the peril and appreciated it in time, by the exercise of reasonable care to have avoided the injury, and the failure to escape the injury resulted from his failure to keep that lookout and exercise that care, then and in that event the defendant is liable in this action and you must find for the plaintiff, although the plaintiff may have been guilty of negligence, providing such negligence of the plaintiff, if any, had culminated in a situation of peril from which he could not by the exercise of reasonable care have extricated himself."

Appellants insist that, after they saw the respondent's truck, there is no evidence that they should have anticipated any danger to the respondent. Appellants also argue that the last clear chance rule

". . . could not be held to apply where the only risk of danger was to the appellant himself and his property and the two-ton truck belonging to the respondent. There being no risk to any human being other than himself apparent to the appellant, the first phase of the last clear chance doctrine should not have been submitted to the jury."

It is further argued that the instruction on the second phase of the last clear chance was not applicable, as respondent's negligence (truck stalled because of lack of gasoline, failure to properly secure the tow chain, and failure to post a lookout for oncoming traffic) continued up to the time of the accident. In *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, we held that, where a traveler negligently placed himself in a dangerous situation upon the highway, if a person in control of an automobile actually saw the traveler's situation and should appreciate his danger, the last clear chance rule would apply without regard to the continuing negligence of the traveler concurring with that of the operator up to the very instant of the injury. In that case, we described, as follows, another situation to which the second phase of the rule applied:

"Where the person in control of such agency, by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the nature of the locality, could have discovered and appreciated the traveler's perilous situation in time, by the exercise of reasonable care, to avoid injuring him, and injury results from the failure to keep such lookout and to exercise such care, then the last chance rule applies, regardless of the traveler's prior negligence, whenever that negligence has terminated or culminated

in a situation of peril from which the exercise of ordinary care on his part would not thereafter extricate him. This last phase of the rule applies whenever injury results from new negligence or from a continuance of the operator's negligence after that of the traveler has so ceased or culminated."

It is true respondent was between the two trucks and was not within the range of appellant driver's vision. It may be that Billingsley, on the left front side of respondent's truck, was not in a position where the driver could see him. We shall assume, for the purpose of this argument, that not one human being was or could have been seen near the two trucks.

So far as respondent's alleged continuing negligence is concerned, it is clear from what we have already said that the stalling of the truck because of lack of gasoline and the manner in which the tow chain was secured did not constitute negligence. The failure to post a lookout for oncoming traffic did not constitute negligence. It was, of course, the duty of respondent to have a tail light on his truck, and, as we have seen, a tail light, as required by the statute, was on respondent's car and was functioning as required. That light was a signal of danger which the appellant driver was charged with the duty of observing. In the absence of a statute so requiring, and we know of none, a traveler, stopping on the highway as respondent stopped, is not required to place a guard to notify automobiles approaching from the rear of the standing car. Clearly, the respondent was not guilty of negligence which continued up to the time of the accident. Therefore, appellants have no just cause for objection to the second phase of the instruction.

The objection to the first phase of the instruction, on the ground that it was not applicable because the only risk of danger was to the appellants, to their

property and to the property of the respondent, and there was no risk to any human being apparent to appellants, is not well taken. The last clear chance doctrine should be extended to a case wherein the situation of a plaintiff, as in the case at bar, is such that the defendant is charged with knowledge that some human being is in a state of present peril. Otherwise, though the engineer and fireman of a locomotive saw a stalled automobile on the railroad track within time to have averted a collision with such automobile, the *tort feasor* would be absolved from liability for personal injuries sustained in the collision by the occupants of the automobile, if the engineer and fireman did not see such occupants.

It is not a condition precedent to the application of the doctrine of the last clear chance that the defendant have actual knowledge of the plaintiff's peril if, under circumstances such as obtain in the case at bar, the defendant's negligence was so reckless as to betoken indifference to knowledge. In such case, as in the case at bar, the *tort feasor* is charged with knowledge that human beings are in a perilous situation.

While decided upon a different ground, the language of the supreme court of West Virginia in *Smith v. Gould,* 110 W. Va. 579, 159 S. E. 53, with reference to the extension of the principle to a case in which the defendant did not actually know of the plaintiff's peril in time to avoid the injury, but in the exercise of reasonable care under the circumstances would have known of the plaintiff's perilous situation in time to have avoided the injury, is pertinent in the case at bar.

"It is said that actual knowledge by the defendant of the plaintiff's peril is the *sine qua non* of the doctrine; that the imputed knowledge idea is out of place; that the last clear chance doctrine is founded on the

basis of actual knowledge by the defendant of the plaintiff's peril and that a defendant cannot fairly be said to have had a last clear chance to avoid inflicting injury if he did not actually see the peril in time to avoid the injury; that where neither party sees the other there is a situation of concurring negligence; that each owes a duty of lookout; hence no sound basis for recovery by the injured party where the defendant did not actually know the situation. However, the rationale for the extension of the doctrine to a situation wherein the negligent defendant could and should have seen the plaintiff's peril and should have avoided inflicting injury on him is not without its vigorous champions. 45 Corpus Juris, page 990. Such situation is accentuated where there is owing by the defendant to the plaintiff a duty to keep a reasonable lookout commensurate with the instrumentality which he is operating, the locality and attendant circumstances considered."

The dissenting opinion in that case cites *Woloszynowski v. New York Central R. Co.*, 254 N. Y. 206, 172 N. E. 471, in which the court said:

"The doctrine of the last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril, . . ."

The remainder of the paragraph from which the quotation is taken should be quoted. The entire paragraph reads as follows:

"The doctrine of the last clear chance, however, is never wakened into action unless and until there is brought home to the defendant to be charged with liability a knowledge that another is in a state of present peril, in which event there must be reasonable effort to counteract the peril and avert its consequences. *(Wright v. Union Ry Co.*, 224 App. Div. 55 [229 N. Y. S. 162]; 250 N. Y. 526 [166 N. E. 310].) Knowledge may be established by circumstantial evidence, in the face even of professions of ignorance

(cf. *Bragg v. Central New England Ry. Co.*, 228 N. Y. 54 [126 N. E. 253]), *but knowledge there must be, or negligence so reckless as to betoken indifference to knowledge."* (Italics are ours.)

*Woloszynowski v. New York Central R. Co.* sustains the position we take in the case at bar.

The other assignments are based upon the refusal of the trial court to give certain requested instructions and the giving of other instructions. We are convinced by our examination of all the instructions that the jury were correctly charged under the pleadings and the evidence. The court did not commit prejudicial error in refusing to give the requested instructions, as they were given, in substance, in other instructions, in so far as the evidence in the case calls for instructions upon the matter requested.

The record before us does not disclose reversible error; therefore the judgment should be, and it is, affirmed.

BEALS, C. J., MITCHELL, and HOLCOMB, JJ., concur.