HAASE, Appellant, v. WILLERS TRUCK SERVICE, INC., et al, Respondents

(34 N. W.2d 313.)

(File No. 8942. Opinion filed October 25, 1948)

Rehearing Denied Nov. 30, 1948.

**A. J. Beck,** of Elk Point, for Appellant.

**Bailey, Voorhees, Woods & Fuller,** of Sioux Falls, and **Donley & Crill,** of Elk Point, for Respondents.

SMITH, J. William C. Haase was killed November 25, 1942, as a result of a collision of two motor vehicles. The administratrix of his estate brought this action in May 1945, under SDC 37.22 for the benefit of the next of kin, and alleged that the death was caused by the negligence of defendants. The answer of the defendants contained a general denial, and an allegation that the death was caused by the contributory negligence of the deceased. Trial was had in November 1946. At the close of plaintiff's case the court granted a motion of defendants for a directed verdict, and a verdict and judgment for defendants resulted. The plaintiff has appealed.

■ Viewing the record in the light most favorable to plaintiff, we are to determine whether there is any substantial credible evidence which would have supported a verdict of the jury for plaintiff. Hansen v. Isaak, 70 S. D. 529, 19 N. W.2d 521; Lohr v. Watson, 68 S. D. 298, 2 N. W.2d 6 and Wolff v. Stenger, 59 S. D. 231, 239 N. W. 181

In support of the ruling of the trial court the defendants assert that in violation of SDC 44.0324 the deceased left the truck he was driving upon the paved portion of a country highway, although it was practicable to leave it on the eight-foot shoulder of the highway, and unnecessarily exposed himself to danger of harm by lying under and behind the truck so placed while attempting to put a chain on its right rear wheel, which conduct, in the undisputed circumstances, constituted contributory negligence as a matter of law. Of course, this contention assumes negligence on the part of defendants which was a proximate cause of the harm to decedent. We have concluded this contention must be sustained.

■ Plaintiff cannot recover if the more than slight negligence of the deceased was a legally contributing cause of his death. Ulrikson v. Chicago, M., St. P. & P. R. Co. et al., 64 S. D. 476, 268 N. W. 369 and Friese v. Gulbrandson, 69 S. D. 179, 8 N. W.2d 438. As applicable to this case, con-

tributory negligence is conduct on the part of a decedent which falls below the standard to which he should have conformed for his own protection and which was a legally contributing cause, co-operating with the negligence of the defendants in bringing about his death. The standard by which his conduct is tested is that to which a reasonable man would conform under like circumstances. Iverson v. Knorr, 68 S. D. 23, 298 N. W. 28. Contributory negligence is generally a question of fact and to be submitted to the jury for decision; however, if it is a matter of declaring a standard of conduct or of applying such standard to a set of undisputed conduct facts which are of such a nature that reasonable men could not differ in opinion as to whether or not the exhibited conduct conforms to the established standard, then the matter is for the court. Ulrikson v. Chicago, M. St. P. & P. R. Co. et al., supra. And departure from a statutory standard of conduct which is a contributing cause, co-operating with the negligence of defendants in bringing about decedent's death, will constitute contributory negligence by decedent as a matter of law. Iverson v. Knorr, supra.

A pertinent standard of conduct to which deceased was required to conform is prescribed by statute as follows: "No person shall park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, outside of a business or residence district, when it is practicable to park or leave such vehicle standing off of the paved or improved or main traveled portion of such highway; * * *" SDC 44.0324.

We turn to a consideration of the undisputed facts established by the testimony of plaintiff's witnesses, and the cross-examination of defendant Heath.

The collision which caused the death of decedent occurred on November 25, 1942 at a point on U. S. Highway No. 77 about two and one-half miles northwest of Jefferson, Union County, South Dakota. Jefferson is but a few miles north of Sioux City, Iowa, and this highway carries all of the traffic to and through Sioux City from southeastern South Dakota. At the place of collision the highway extends

east and west. It turns about twenty-five degrees to the southwest about 1,500 feet to the west of the place of collision. Travel to the east from this point leads to Jefferson and Sioux City and to the west travel leads to Elk Point. The pavement is 20 feet wide, the shoulders are just a few inches less than 8 feet wide, and there is a 6 or 7-foot slope into the ditch. On the day in question the ditch was filled with snow, and as a result of a rain earlier in the day, the pavement and shoulders were covered with ice. It was cold and a wind was sifting some snow across the pavement. A witness declared it was so slippery he had difficulty in standing up.

At some time between 5 and 6 p. m. an accident occurred at the point in question which precipitated a Model A Ford into the ditch on the north side of the highway and a Chevrolet sedan into the south ditch. The sheriff of Union County had been called. Before he left Elk Point for the scene of the accident, he called the deceased and asked him to follow with his wrecker tow truck. When the sheriff arrived he stopped his car on the shoulder of the road facing east just a few feet east of the Chevrolet which was located in the south ditch with its front end toward the northwest. The sheriff's car was equipped with a 7-inch blinker light near the left rear fender on a level with the bumper. This light cast an intermittent red glare on the pavement, and the blinker itself could be seen at a considerable distance. He had this light and the headlights of his car lighted. Shortly after the sheriff arrived the deceased, driving the wrecker tow truck of his employer, pulled past the sheriff's car to the east, turned around, came west and backed up in front of the Chevrolet. The sheriff got out of his car and walked over to the truck. The attempt then made to pull the Chevrolet out failed for lack of traction. The sheriff suggested chains. Thereupon the deceased backed his truck up somewhat in preparation for putting on the chains. As it was positioned as he started to work, the truck was at a 25-degree angle with pavement and its right front corner extended out on to the pavement two to three feet. It masked the blinker light on the

sheriff's car from traffic approaching from the west on the south half of the highway. No flares were put out, and although the sheriff was accompanied by his deputy, no guard was put out to the west to warn traffic of danger. The headlights of the tow truck cast their rays at an angle with the highway and slightly up. It had a cluster of colored lights at the top of its cab.

As the sheriff walked away toward his car, the deceased was lying on the ground at the rear of the truck with his face to the east, and a portion of his body under the truck as he attempted to put the chain on the right rear wheel. After getting into his car the sheriff drove east about 1,000 feet to an intersecting lane, turned around and returned with the idea of placing his lights west of the tow truck. During this trip he saw traffic coming from the west. A car passed on east. He then saw that a truck traveling east had just passed the tow truck of deceased and was stopping. He drove up to it as the driver was alighting and in strong language told him to move on as they did not want another accident. The trucker followed his advice.

When the sheriff reached the tow truck he found it had been backed down into the ditch at a right angle with the pavement and immediately to the west of the Chevrolet. Its right front wheel rested on the neck of the deceased. Death had probably come instantaneously.

Thereupon the sheriff sought to overtake the trucker with whom he had just talked. He caught up with him and followed him into Jefferson where he stopped. The driver was the defendant Heath. He readily admitted that he had felt a jar as he passed the tow truck. His testimony as an adverse witness at the trial disclosed that he was driving from Sioux Falls with a semi-trailer truck carrying a double deck of hogs. Coming out of Elk Point he was preceded by an automobile. He did not attempt to pass it. At times the car would draw away from him and then as it slowed down he would roll up to it, but mostly he drove at a distance of from 200 to 300 feet from the car. He was watching the road ahead but did not observe the road ahead of the car. After they had rounded the curve, above de-

scribed, defendant Heath noticed the car ahead slow down and turn out for something. He followed it but rolled up to within 75 feet of it as it slowed and turned out. He did not see the tow truck until he was 100 feet or less from it. He did not put on his brakes because he thought that would put him into the ditch. At the moment of his discovery of the tow truck, or immediately thereafter, he felt his truck slip. He then "shifted into third and stepped on it to straighten it out." As he straightened he felt a slight jar at the right rear of his trailer, and came to a stop to investigate. As he alighted the sheriff ordered him on. He neither saw deceased, nor did he know that he had harmed any one until so advised by the sheriff. The only mark left by the collision was a bent right front lamp on the tow truck of deceased, and a small broken rod on the right rear of the trailer of defendant.

The deceased had been engaged in operating this wrecker for a number of years and had served many motorists on the highway in question. He was thoroughly familiar with the highway and with the traffic it carried.

■ A seeming contempt for a peril with which he was thoroughly familiar was a contributing cause of the death of the decedent. He took an unnecessary risk. He placed his truck to that it obstructed a portion of the 20-foot ribbon of pavement. No reason is or can be suggested which justified him in failing to remove his truck at least to the 8-foot shoulder while he was putting on his chains. In so doing he failed to conform to the statutory standard of conduct prescribed by SDC 44.0324. Duncan v. Madrid, 44 N. M. 249, 101 P.2d 382; Kassela v. Hoseth, 217 Wis. 115, 258 N. W. 340; Huston v. Robinson, 144 Neb. 553, 13 N. W.2d 885. He knew the position of his car because he had placed it. He knew that it extended on to the pavement and that it masked the blinker light on the sheriff's car from the right hand, eastbound traffic which his truck obstructed. He knew of the heavy load of trucking and other traffic which traveled that way. The hazard added by the ice was apparent. Because of the ice the most careful driver coming from the west was a source of danger. He

knew that no warning flares or guard had been placed to the west. He must have known that positioned as he was, the sheriff offered him little protection. In the face of all of this he crawled under his truck to put a chain on its right wheel. If he had not been under or behind the truck or if it had not extended on to pavement, decedent would not have been injured.

■ One may not unnecessarily place and maintain oneself in such a dangerous position and then require others who failed to discover his peril to respond in damages. Dragotis v. Kennedy et al., 190 Minn. 128, 250 N. W. 804; Descombaz v. Klock, 58 S. D. 173, 235 N. W. 502; Staib v. Tarbell, 65 S. D. 304, 273 N. W. 652; 38 Am. Jur. 859, Negligence, § 181.

It it suggested that deceased did not know the sheriff was going to drive east and turn around. The record does not disclose whether deceased saw the sheriff drive east, or whether he knew he was going. We are satisfied, however, that it was negligence as a matter of law for deceased to conduct himself as he did with the sheriff in place, and that such negligence was a contributing cause to his death. The sheriff withdrew some of the protection his presence was affording deceased. No principle of law with which we are familiar declares that negligence is insulated as a proximate cause of harm by the intervening act of such a third person which only serves to increase the degree of hazard attending such negligent conduct.

In the absence of any discussion of the point, we understand the parties to agree that if the deceased was contributorily negligent, his negligence was more than slight. We are in accord with that view and so hold. Cf. Friese v. Gulbrandson, supra.

Able counsel has elected not to argue that the continuing negligence of decedent in placing and maintaining himself in a position of peril has been neutralized and rendered legally remote as a cause of his death by the doctrine of last clear chance. It may be doubtful, therefore, whether we are obligated to enter that field of inquiry in our search for possible support for a verdict favorable to plaintiff.

However, because that theory has been put forward by our colleague, we have determined to briefly indicate our reasons for concluding that, tested by that doctrine, the evidence is insufficient to support a verdict for plaintiff.

 A consideration of the application of the doctrine of last clear chance in this case, should be approached, we think, in the light of the crucial undisputed fact that deceased retained the ability to act in self-protection after he negligently and unnecessarily placed himself in a position of obvious peril under his truck. By the exercise of ordinary care thereafter he could have observed on-coming dangerous traffic and have extricated himself in time to have avoided injury. This indisputable ability to act in self-protection is important because to fail to observe approaching danger and to extricate himself constituted continuing negligence on his part. The doctrine of last clear chance, as applied in this jurisdiction, will only neutralize such continuing and concurrent negligence of the injured person and permit recovery for his injuries or death notwithstanding his negligence, if the evidence will support an inference that defendant actually discovered the peril to such person, and realized or had reason to realize that such person was oblivious to his peril, and injury resulted because defendant thereafter failed to act with reasonable care in attempting to avoid such injury. Nielsen v. Richman, 68 S. D. 104, 299 N. W. 74; McFarland v. Chicago, M. & St. P. R. Co., 51 S. D. 85, 212 N. W. 493.

Because of this retained ability of deceased to act in self-protection the primary negligence of defendant, including an assumed breach of his duty to discover the situation of deceased, is not of significance. "The great weight of judicial authority denies the application of the last clear chance doctrine in the situation where the defendant, while under a duty to discover the danger to the injured person, did not actually discover it and the injured person was physically able to escape from the peril at any time up to the moment of impact." 38 Am. Jur. 909, § 224, and see Thompson v. Porter, 21 Wash.2d 449, 151 P.2d 433.

In Nielsen v. Richman, supra [68 S. D. 104, 299 N. W. 76], we approved the rule appearing in Restatement, Torts, § 480, viz.,:

"A plaintiff who, by the exercise of reasonable vigilance could have observed the danger created by the defendant's negligence in time to have avoided harm therefrom, may recover if, but only if, the defendant

"(a) knew of the plaintiff's situation, and

"(b) realized or had reason to realize that the plaintiff was inattentive and therefore unlikely to discover his peril in time to avoid the harm, and

"(c) thereafter is negligent in failing to utilize with reasonable care and competence his then existing ability to avoid harming the plaintiff."

The contributory negligence of deceased having been established and it appearing without dispute that by the exercise of reasonable vigilance the deceased could have observed defendant bearing down upon him along the south side of the icy pavement in time to have removed himself from his position of peril, the burden was on plaintiff. (Gregory v. Maine Cent. R. Co., 317 Mass. 636, 59 N. E.2d 471, 159 A. L. R. 714, 724) by direct or circumstantial evidence, to present facts from which a jury could infer all of the matters listed under (a) (b) (c) of the foregoing rule in order to claim the benefit of the doctrine of last clear chance. This, we think, he failed to do. Hence we conclude that the doctrine was not invoked by the evidence.

Because the undisputed facts establish the contributory negligence of decedent and hence will not support a verdict for plaintiff, the ruling and judgment of the trial court must be and is affirmed.

RUDOLPH and HAYES, JJ., concur.

ROBERTS, P.J., concurs specially.

SICKEL, J., dissents.

ROBERTS, P.J., (concurring specially).

Assuming that the question is here, it is my view that the evidence was not sufficient to require submission to the jury on the basis of the last clear chance doctrine. The doctrine presupposes negligence on the part of the person

injured; otherwise recovery could be had upon proof of defendant's negligence and freedom from contributory negligence on the part of the plaintiff. To avoid the effect of the contributory negligence rule, plaintiff must establish subsequent negligence on the part of the defendant operating as the proximate cause of the injury. Although defendant be negligent, yet if such negligence is not the sole proximate cause of the injury, but the negligence of the plaintiff is also a proximate as distinguished from a remote cause, the defendant is not liable. The doctrine may depend upon whether defendant was actually aware of the danger threatening the injured party or was under duty to discover the peril. The doctrine clearly applies to permit a recovery, if defendant actually saw the danger and by the exercise of ordinary care had a clear chance to avoid injury notwithstanding the negligence of the injured person may have continued up to the time of the injury. The negligence of the defendant driver must have consisted in his failure to stop before striking the tow truck or in his failure to turn further to the left. There is no evidence that the defendant driver could have stopped in the distance traversed between the time he first saw the tow truck and the time of the impact or have swerved his vehicle to the left with safety to himself to avoid the impact.

There was not sufficient evidence in my opinion to take the case to the jury if we accept the view that the doctrine of last clear chance is not limited to cases where the danger was not actually discovered by the defendant, but may rest upon a breach of duty to discover. Where danger is not actually discovered, but there was a breach of duty to discover, the continuing negligence of the injured person precludes an application of the doctrine. It seems to me that it must be said that decedent under all the circumstances did not exercise that care which a reasonably prudent person would have exercised under similar conditions and that his negligence was contemporaneous and active up to the very moment of the accident and contributed proximately to his death.

HAYES, J., concurs.

SICKEL, J. (dissenting).

The majority opinion in this case states: "A seeming contempt for a peril with which he was thoroughly familiar was a contributing cause of the death of the decedent." In other words, the opinion of the court is founded upon the proposition that leaving his car partly on the paved portion of the highway and crawling under it to put on the chains constitutes contributory negligence and is a complete bar to recovery in this case.

It is undisputed that the front end of the tow car projected over the paved portion of the highway to the extent of two or three feet, and that the tow car was placed in that position by decedent. Neither can it be denied that this was a violation of the statutes of the state and constitutes negligence.

There is substantial evidence in this case to support the claim that the tow truck was plainly visible and that there was ample room to go around it to the left without leaving the paved portion of the highway; that the defendant Heath did not so drive his truck that he could or did discover the tow truck and bring his own truck to a stop within the range of his vision, nor did he discover the tow truck in time to turn out and pass it on the left; that if said defendant had exercised reasonable care he would have discovered the situation of the tow truck, and had he exercised the vigilance which it was his duty to exercise he would have avoided the collision. The evidence of defendant Heath's failure in this regard was sufficient to justify a jury in finding him guilty of negligence.

After the occurrence of Heath's negligence decedent had no opportunity, by the exercise of reasonable care, in the situation then existing, to avoid the consequences of said defendant's negligence.

In the above situation the question in this case is whether or not decedent's conduct in placing himself and the tow truck in a situation of danger was a proximate cause of the collision. Nielsen v. Richman, 68 S. D. 104, 299 N. W. 74; Nehring v. Connecticut Co., 86 Conn. 109, 84 A. 301, 45, L. R. A., N. S., 896, 896, 902; Locke v. Puget Sound Inter-

national R. & Power Co., 100 Wash. 432, 171 P. 242, L. R. A. 1918D, 1119; Mosso v. E. H. Stanton Co., 75 Wash. 220, 134 P. 941, L. R. A. 1916A, 943; Leftridge v. City of Seattle, 130 Wash. 541, 228 P. 302; Anno. 92 A. L. R. 51, Note 8.

In Nehring v. Connecticut Co., supra, the court said [86 Conn. 109, 84 A. 304]: "It follows that the decisive question, in each case where a plaintiff injured is found to have been at fault in the premises from his failure to exercise the required degree of care, resolves itself into one as to whether that fault was or was not a proximate cause of the injury, and that the answer to that question will infallibly determine whether or not it will bar a recovery."

The Supreme Court of Washington said in Locke v. Puget Sound International R. & Power Co., supra, [100 Wash. 432, 171 P. 244] that "The doctrine of last clear chance does not abrogate any of the rules of proximate cause; it rather affirms them."

In Mosso v. E. H. Stanton Co., supra, the same court said [75 Wash. 220, 134 P. 944]: "The rule of last clear chance is grounded in the doctrine of proximate cause." And the same proposition was reaffirmed in Leftridge v. City of Seattle, supra. In Nielsen v. Richman, supra, this court adopted the same principle from the Mosso case.

This court defined proximate cause in Joslin v. Linder, 26 S. D. 420, 128 N. W. 500, 502, as follows: "Proximate cause of an injury is the immediate cause; it is the natural and continuing sequence, unbroken by any intervening cause, preceding the injury, and without which it could not have happened. * * * Proximate cause means probable cause. Remote cause means improbable cause." It must be noted that the collision must have been a logical consequence of the injured person's negligent act, unbroken by any intervening cause and without which the collision would not have happened. Otherwise his negligence is not a proximate cause of his injury, and is not contributory.

Proximate cause is always an essential element of negligence and contributory negligence, and the doctrine of last clear chance is a phase of the principle of proximate cause. That doctrine presents a criterion by which the original

or antecedent negligence of the plaintiff in getting himself or his property in a place of danger, may be considered as a remote cause of the injury. When this occurs the plaintiff's negligence is not contributory and does not constitute a defense.

The principles of negligence and proximate cause as here involved are not of recent origin. In the case of Butterfield v. Forrester (1809) 11 East 60, Eng. Reprint 926, 19 Eng. Rul. Cas. 189, an English court held that when an accident is the result of fault on both sides, neither party can maintain an action. This was the first clear enunciation of the rule of contributory negligence. According to that rule any negligence on the part of the plaintiff which in any degree contributed to his injury was treated by the courts as a proximate cause and barred recovery. It was in 1842 that the English Court of Exchequer decided the celebrated case of Davies v. Mann, 10 M. & W. 546, 152 Eng. Reprint 588, 19 Eng. Rul. Cas. 190. The facts in that case were that plaintiff was the owner of a donkey which he negligently turned into the public highway with the forefeet fettered, and left him. Defendant, while driving along the highway negligently ran into the donkey and killed him. Plaintiff was allowed to recover notwithstanding his own negligence. Lord Abinger, C. B., said: "* * * As the defendant might, by proper care, have avoided injuring the animal, and did not, he is liable for the consequences of his negligence, though the animal may have been improperly there." Park, B., said: * * * the Judge simply told the jury, that the mere fact of negligence on the part of the plaintiff in leaving his donkey on the public highway was no answer to the action, unless the donkey's being there was the immediate cause of the injury; and that, if they were of opinion that it was caused by the fault of the defendant's servant in driving too fast, or, which is the same thing, at a smartish pace, the mere fact of putting the ass upon the road would not bar the plaintiff of his action. All that is perfectly correct; for, although the ass may have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief. Were this not so, a

man might justify the driving over goods left on a public highway, or even over a man lying asleep there, or the purposely running against a carriage going on the wrong side of the road." Thus was established the rule that the party who has the last clear opportunity to avoid the accident is considered wholly responsible therefor notwithstanding the injured person may be in a dangerous position because of his own negligence, provided the defendant failed to use due care in an effort to avoid the injury.

In the present case defendant driver claims that he had no actual knowledge of the danger until it was too late to avoid the collision, and the majority opinion states: "One may not unnecessarily place and maintain oneself in such a dangerous position and then require others who failed to discover his peril to respond in damages." The question so presented is whether the duty to acquire knowledge is the equivalent of actual knowledge. In the case of Leftridge v. City of Seattle, 130 Wash. 541, 228 P. 302, 303, the Supreme Court of the State of Washington divided this subject into two categories depending upon whether defendant actually saw, or did not see but should have seen, the peril. In that case the court stated the basis of liability in each instance as follows: "* * * (1) that, where the defendant actually saw the peril of a traveler on the highway, and should have appreciated the danger and failed to exercise reasonable care to avoid injury, such failure made the defendant liable, although the plaintiff's negligence may have continued up to the instant of the injury, but (2) that, where the defendant did not actually see the peril of the plaintiff, but by keeping a reasonably careful lookout commensurate with the dangerous character of the agency and the locality should have seen the peril and appreciated it in time, by the exercise of reasonable care, to have avoided the injury, and failure to escape the injury results from failure to keep that lookout and exercise that care, the defendant was liable only when the plaintiff's negligence had terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself."

This definition is in harmony with the final draft of Restatement of the Law of Torts in II Torts A. L. I. §§ 479, 480, and has been widely if not universally adopted as a fair statement of the rule. The first category applies to cases where defendant actually saw the peril, and plaintiff's negligence may have continued up to the instant of the injury. Under the second category the character of defendant's conduct in respect to care must be determined by what he should have known, and plaintiff's negligence must have terminated or culminated in a situation of peril from which the plaintiff could not, by the exercise of reasonable care, extricate himself. Nehring v. Connecticut Co., 86 Conn. 109, 84 A. 301, 45 L. R. A., N. S., 896, Chapin v. Stickel, 173 Wash. 174, 22 P.2d 290; State of Maryland v. Coard, 175 Va. 571, 9 S. E.2d 454; Dillon v. Sterling Rendering Works, 106 Colo. 407, 106 P.2d 358; Weintraub v. Cincinnati N. & C. R. Co., 299 Ky. 114, 184 S. W.2d 345; Morlan v. Hyatt, 116 Kan. 86, 225 P. 739; Kansas City Southern R. Co. v. Ellzey, 275 U. S. 236, 48 S. Ct 80, 72 L.Ed. 259; Smith v. Could, 110 W. Va. 579, 159 S. E. 53, 92 A. L. R. 28 and Comment p. 47.

In Nehring v. Connecticut Co., supra, [86 Conn. 109, 84 A. 307] it was said that, "the character of one's conduct in respect to care is to be determined in view of what he should have known as well as of what he did in fact know."

The rule was applied by the Supreme Court of Washington in Chapin v. Stickel, supra, where plaintiff's truck was being towed by another truck. The tow chain unhooked and the two trucks stopped for the purpose of reconnecting them. In doing this plaintiff's position was between the two trucks where he stood when defendant's car proceeding in the same direction, struck the rear of plaintiff's truck, shoved it ahead and injured plaintiff. No other cars were near. The road was dusty; defendant was driving forty miles per hour. He testified that he did not see plaintiff's truck, until he was twenty or thirty feet from it and the court said [173 Wash. 174, 22 P.2d 291]: "There was ample evidence to sustain the verdict that the appellants had sufficient time, had they looked, to have seen and have avoided the truck of respondent. Had appellant driver exercised the required degree of

care he could have seen the tail-light on respondent's truck when it was more than two hundred feet south of the offending automobile. Appellants will not now be heard to say that they did not see an object which they plainly could have seen had they looked. 'The situation is the same as though he had looked and seen the object.' "

In State of Maryland v. Coard decedent stopped his car on a busy street five or six feet from the curb, getting out on the left side near the center of the street to clean the snow and sleet from his windshield. Defendant collided with the rear of the car and struck decedent, killing him. The Virginia court said [175 Va. 571, 9 S. E.2d 458]: "Whenever one sees another in a place of peril from which it appears that he can not extricate himself or where it appears that he is unconscious of his danger, or whenever by the exercise of ordinary care the defendant should have been cognizant of the situation and has a clear chance to avoid an accident with safety to himself, he must take that chance. In short, he is charged with what he saw and with what he should have seen. The antecedent negligence of a plaintiff does not of itself preclude his recovery. Starkly stated, the reason for the rule is this: One can not kill another merely because he is negligent. * * * Applying this rule to the facts under review, it follows that if Coard or his driver saw, or in the exercise of reasonable care should have seen, the Joynes car, standing, as it was, far out into the street, and had a clear chance to avoid a collision, he is liable. Joynes' car was followed by two other automobiles, the drivers of which did see it, turned to the left and passed in safety."

The application of the principle of law under discussion is also illustrated in Dillon v. Sterling Rendering Works. There Dillon was driving a truck at night in a fog. He stopped on his right side of the road with three or four feet of the rear end of his truck on the pavement, without lights. He alighted to remove the frost from his windshield. Defendant was driving in the same direction. Because of freezing temperature mingled with sleet defendant had no visibility except a two inch strip in his windshield. He proceeded, concentrating his vision on the stripe in the center of the

highway without making any effort to observe whether there was another car on his side of the road. He side-swiped Dillon's truck on the left side, also struck Dillon and killed him. Defendant got out of his car not knowing what or whom he had struck, and never until then had seen or attempted to see if there was any person or object on the highway ahead of him. Notwithstanding defendant's lack of actual knowledge as to the presence of Dillon and his truck on the highway, it was held that the question of defendant's liability was one for the jury. In Morlan v. Hyatt, supra, defendant saw or could have seen an intoxicated man lying in the road, and the court held that it was his duty to turn out and go around or stop his car.

The majority opinion refers to Restatement of the Law of Torts, II Torts A. L. I. § 480 which was quoted and approved by this court in Nielsen v. Richman, supra, [68 S. D. 104, 299 N. W. 76]. That section is applicable only where the defendant "knew of the plaintiff's situation". The opinion in Nielsen v. Richman, supra, states: "That the defendant knew of the plaintiff's situation is clear from his testimony." That section was therefore properly applied in Nielsen v. Richman, supra, but here we are considering the second category, in which defendant did not but should have known the plaintiff's situation. However, the citation of that rule is consistent with the majority opinion which rejects the second category entirely.

This question is not to be determined according to the ordinary rules relating to actual or constructive knowledge. Those rules have to do with duties which require the reasonable use of one's senses for his own protection. Here the law imposes on a driver certain duties which he owes to others for their safety on the highway. It is the duty of the driver of a motor vehicle to look when by looking he could have seen an obstruction on the highway and thereby avoided a collision. It is also his duty to so drive that he can stop his car within the range of his vision, and to stop his car or pass an obstruction on the left when the way is clear. It appears from the evidence in this case that the driver who immediately preceded Heath looked, saw the

truck, and turned to the left passing it without incident. There is no apparent reason why the defendant with reasonable care should not have done as well.

It has been suggested that Heath probably could not have seen Haase under the truck, had he been looking. This case is based upon the contention that defendant's truck collided with the tow truck and drove it back over Haase, not that defendant's vehicle struck Haase. The question is whether defendant saw or should have seen the tow truck, not whether he saw or should have seen Haase. So far as the plaintiff's claim to damages for the death of Haase is concerned it is immaterial whether such death "could have been anticipated or not", if defendant's negligence was the proximate cause of the collision. SDC 37.1901. This statute applies in negligence cases. Davis v. Holy Terror Min. Co., 20 S. D. 399, 107 N. W. 374. The rule applies to negligence cases involving the doctrine of last clear chance. Chapin v. Stickel, 173 Wash. 174, 22 P.2d 290.

It is asserted that the injured person's negligence had not terminated but was continuing and concurrent up to the time of the collision. Such negligence is regarded as terminated, though it has placed decedent in a perilous position, after that position has become static or passive or is merely a condition upon which defendant's negligence has operated to cause the injury. 4 Blashfield Cyclopedia of Automobile Law and Practice Pt. 2, § 2814.

The distinction between that negligence which has terminated and the negligence which is continuing and concurrent, and therefore contributory, is clearly pointed out in Nehring v. Connecticut Co., supra. There the court said: "Here it is assumed that the situation of exposure had been created and established by the plaintiff's action before the period of time began within which the defendant acting reasonably might have saved him, and that within that period the plaintiff did nothing to create or materially change that situation by active conduct which was not marked by reasonable care. Under the assumption he remains passive, in so far at least as negligent action is concerned, and can be regarded as careless only in this that he

did not awake to his surroundings, and do what he reasonably could to avoid the threatened consequences of a situation which he had already negligently brought about. In such cases the humane, and to our mind the better, reason, all things considered, leads to the conclusion to which our former opinions already cited commit us, and which a large number of cases elsewhere approve, that the want of care on the part of the plaintiff will be regarded as a remote and not a· proximate cause." On the other hand, "To say that no matter if one be negligent in going forward into danger, or in creating new conditions or complicating them, the law will protect him and cast upon the other party the responsibility for the result, is to ignore the fundamental principle of contributory negligence, and bring the law upon that subject into hopeless confusion, and merit for it the condemnation which Thompson has so forcibly expressed. 1 Thompson on Negligence §§ 230, 233. The well-considered cases which have directly dealt with this subject agree with us, we think, in our view that active continuing negligence of the kind assumed is to be regarded as contributory in the legal sense."

It must be borne in mind that the second category of the Washington formula excludes those cases in which there is no duty on the part of defendant to discover the danger, such as trespass cases. Those cases are also excluded in which the injured party is active, changing his position and creating new conditions up to the time of the injury, or at least after defendant is no longer able, by the exercise of reasonable care, to avoid the injury, as exemplified in Iverson v. Knorr, 68 S. D. 23, 298 N. W. 28, and cases cited. Stripped of all its intracacies and involvements the rule is simply this: "That doctrine, rightly applied in the Chunn Case [Chunn v. City & Suburan Ry., 207 U. S. 302, 28 S. Ct. 63, 52 L.Ed. 219], amounts to no more than this, that a negligent defendant will be held liable to a negligent plaintiff if the defendant, aware of the plaintiff's peril or unaware of it only through carelessness, had in fact a later opportunity than the plaintiff to avert an accident." Kansas City Southern R. Co. v. Ellzey, 275 U. S. 236, 48·S. Ct. 80,81, 72 L.Ed. 259.

The distinction between terminated and continuing negligence is fundamental to the question of proximate cause as here presented. In this case it may be assumed that decedent created a situation of exposure by placing his truck in an unlawful position on the highway and then crawling under it to affix the chains, but it must be conceded also that this position was established before defendant Heath arrived on the scene. It had become a condition. Thereafter Haase remained passive. He may have been careless in that he did not awaken to the danger of his surroundings, and did not thereafter change his position or that of the truck, but that does not excuse Heath's conduct in driving so close to the car ahead that he obstructed his own view of the road. Heath testified that he was following the passenger car and was right next to it when it pulled out to pass the tow truck; that he knew it was dangerous to drive so close.

"Q. And nevertheless, you drove that close to the car ahead of you? A. Well, I come onto him as he stopped, or put on his brakes, why, I naturally rolled right up on him, and when I pulled out to go around, my outfit started to slide, so I just kicked it in gear and stepped on it to straighten it out.

"Q. And you knew, when you did that, there was danger of sliding and hitting the tow truck? A. Well, no, I didn't know at the time.

"Q. You didn't know? A. But I knew I would slide in the ditch and tip over if I didn't

"Q. If you did use your brakes. A. Yes." He further testified that the car ahead of him was obstructing his vision completely as to anything ahead and that he saw the tow truck when he was "right on it"; that the lights of the tow truck were shining across the pavement; that he did not know what he had hit until the sheriff told him; that prior to the time the touring car turned out to pass the tow truck it had shut off his view of the road ahead. From all the evidence in this case it appears that decedent's negligence placed him in a position of exposure but that this condition was created before the intervention of Heath's negligence;

that decedent did not thereafter by active conduct, create a new hazard or change the situation originally created; that because of defendant Heath's intervening negligence decedent was placed in a situation of peril from which he obviously could not, by the exercise of reasonable care, extricate himself. Decedent's negligence, therefore, was not the immediate cause of the injury because it was broken by the intervening negligence of Heath which preceded the injury, and without which the injury could not have happened. Joslin v. Linder, 26 S. D. 420, 128 N. W. 500. In this course of events, decedent's negligence became the remote, and Heath's negligence became the proximate cause of the collision and consequent death of Haase.

For the reasons above stated it is my opinion that the judgment should be reversed and the cause remanded for a new trial.