# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1114

_____

Marques Good Low                              *
                                              *
          Plaintiff - Appellant,              *
                                              *   Appeal from the United States
          v.                                  *   District Court for the District
                                              *   of South Dakota.
United States of America                      *
                                              *
          Defendant - Appellee.               *

_____

Submitted: September 14, 2005
Filed: November 15, 2005

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

MELLOY, Circuit Judge.

Marques Good Low brought suit under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Good Low sustained damages when a Cheyenne River Sioux Tribe ("CRST") police officer accidentally ran over him after Good Low had eluded officers, driven into an alfalfa field, and vacated his vehicle. Following a bench trial, the district court[1] entered judgment for the government. We affirm.

_____

[1] The Honorable Andrew W. Bogue, United States District Court Judge for the District of South Dakota.

I. Background

On September 11, 1999, Good Low, then 18-years old, went to a party where he consumed a great deal of alcohol. In the early hours of September 12, 1999, Dan Iron Road, a CRST police officer, observed Good Low speeding and driving erratically. A chase ensued, and Good Low left the road and evaded the officer by driving through a marsh. Good Low then drove into an alfalfa field where he crashed into a bale of hay. During the course of the chase, Iron Road was joined by other officers including CRST Sergeant Anthony Aungie. While driving on a road adjacent to the field and using a spotlight, Aungie located Good Low's vehicle resting against the hay bale. The officers located a gate and drove their vehicles into the field.

Aungie was able to see that the door of Good Low's vehicle was open, but he could not see anyone inside. He continued to drive toward the vehicle at fifteen miles per hour. Aungie used his spotlight and his headlights, although the latter were obstructed by the alfalfa which was more than two feet high. None of the officers used their flashing overhead lights or sirens. When Aungie was approximately 100 yards from Good Low's vehicle, Good Low raised his head above the alfalfa. Good Low was only a few feet in front of Aungie's vehicle, and Aungie could not stop before running over him with both his front and rear right tires. Good Low sustained serious injuries including a fractured pelvis and a lacerated urethra. He continues to suffer from complications including incontinence and a loss of sexual function.

The district court found that Aungie was negligent for driving at an inappropriate rate of speed in an area where he could not see persons or objects on the ground. However, South Dakota law does not allow a plaintiff to recover if his or her own negligence is more than slight when compared to the defendant's negligence. Because the district court found that Good Low was negligent and that his negligence was not slight when compared to Aungie's, it denied recovery.

II. Analysis

Under the Federal Tort Claims Act, the federal government can be held liable for injury caused by the negligent act "of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). The government employees at issue in this case are the police officers of the CRST. The events at issue occurred in South Dakota, so we must look to the law of that state in determining whether Good Law may recover damages. "South Dakota's comparative negligence statute bars recovery when a plaintiff's contributory negligence is greater than slight compared to the negligence of the defendant . . . ." Estate of C.M. Largent, III v. United States, 910 F.2d 497, 498 (8th Cir. 1990).

Good Low raises two arguments on appeal. First, he asserts that any negligence on his part was slight when compared to Aungie's negligence. Second, Good Low contends that even if his negligence is found to be more than slight, he should not be denied recovery because of the "last clear chance" doctrine. We address each of these arguments in turn.

A. Good Low's Contributory Negligence

After a bench trial, the district court made findings of fact and conclusions of law. It found "no evidence that [Good Low] was ejected from his vehicle when the car hit the hay bale" and determined that "the only rational explanation" for his laying in the alfalfa was that Good Low "voluntarily exited his vehicle and moved to the place where he was struck by Aungie's vehicle." We agree with the district court that "the inherent risks involved with lying face down in the alfalfa field, after leading law enforcement on a high speed chase, are obvious and should have been comprehended by the Plaintiff." Thus, we also agree with the district court

that Good Low's "conduct was clearly a contributing cause . . . in bringing about the injuries sustained."

The district court made several specific findings regarding the degree of Good Low's negligence.  It stated:

> [T]he Plaintiff aggressively attempted to avoid apprehension by fleeing from law enforcement.  His reckless conduct continued when he decided to further elude his pursuers by hiding in the alfalfa field.  His own reckless conduct necessitated the presence of law enforcement officers in the alfalfa field and he was equally culpable in causing the injuries he sustained. The court finds this degree of negligence to be greater than slight.

We review for clear error the district court's finding that Good Low's negligence was more than slight when compared to the negligence of the defendants.  Largent, 910 F.2d at 499.

Good Low disputes the district court's finding that he was "hiding" in the alfalfa.  Although Good Low was too intoxicated to remember the events in the alfalfa field, his attorney suggests that he may have left the vehicle in a state of shock or simply passed out due to his intoxication.  The district court concluded that another explanation was more likely.  It found that "the evidence suggests [Good Low] voluntarily left his vehicle, and, in a further attempt to avoid apprehension, hid in the alfalfa field."  It is undisputed that Good Low had already attempted to elude police by driving into the field.  Furthermore, Good Low did get up off the ground and raise his head above the alfalfa shortly before being struck by the officer's vehicle.  Thus, the evidence does not suggest that he was intoxicated or injured to the point that he was unable to move.  Although Good Low contends that the conclusion that he was hiding was speculative, we cannot reject it as clearly erroneous. Craft v. Metromedia, Inc., 766 F.2d 1205, 1212 (8th Cir. 1985) ("'Where there are two permissible views

-4-

of the evidence, the factfinder's choice between them cannot be clearly erroneous.'") (quoting <u>Anderson v. City of Bessemer City</u>, 470 U.S. 564, 574 (1985)).

Good Low also argues that it was improper for the district court to consider the fact that he fled law enforcement in determining the degree of his negligence. He claims that because his vehicle was already inoperable at the time officers made the decision to enter the field, any actions Good Low took prior to crashing his vehicle were not the proximate cause of his injuries. We need not determine the precise application of South Dakota law on this point because we find that even if the district court improperly relied on the fact that Good Low led officers on a chase, it was harmless error. Other portions of the district court's opinion indicate that, looking solely at Good Low's actions after crashing his vehicle, the district court would still have found him to be more than slightly negligent:

> [T]he only rational explanation [for how Good Low ended up in the alfalfa] is that he voluntarily exited his vehicle and moved to the place where he was struck by Aungie's vehicle. By so doing, he placed himself in danger of being struck by the motor vehicles occupied by his pursuers. The Plaintiff's conduct was clearly a contributing cause which cooperated with Aungie's negligence in bringing about the injuries sustained.

The fact that the district court later described Good Low and Aungie as being "equally culpable" for Good Low's injuries further indicates that, even if the events that occurred prior to entering the alfalfa field were removed from the equation, the district court would still find Good Low more than slightly negligent. <u>See</u> <u>Largent</u>, 910 F.2d at 500 (considering the district court's emphasis of other factors and deciding that the district court would have reached the same decision even if it had not improperly considered a factor later deemed to be irrelevant).

B. Last Clear Chance Doctrine

Although we can ascertain no clear error in the district court's finding that Good Low was more than slightly negligent when his actions are compared to Aungie's, Good Low argues that he is still entitled to recovery based on the "last clear chance" doctrine. This doctrine allows a plaintiff to recover despite his own negligence in some cases where the defendant's "negligent act was the final decisive cause of the accident." Nielsen v. Richman, 299 N.W. 74, 74 (S.D. 1941) (internal quotation marks omitted). The district court's opinion does not discuss the applicability of this doctrine. Assuming *arguendo* that the issue was properly raised below, we find that, under South Dakota law, the last clear chance doctrine does not apply to the circumstances of this case.

The district court concluded that Good Low was hiding in the alfalfa, and, as discussed above, there is no clear error with that finding. Therefore, we must assume that Good Low retained the ability to remove himself from danger by revealing himself to the oncoming officers. Despite his intoxication, Good Low was able to raise his head above the alfalfa and reveal himself to Aungie, albeit too late. As such, his failure to protect himself from the oncoming police vehicles constitutes continuing negligence.

In South Dakota the continuing negligence of a plaintiff is neutralized by the last clear chance doctrine only "if the evidence will support an inference that the defendant *actually discovered* the peril" to the plaintiff and "thereafter failed to act with reasonable care . . . ." Haase v. Willers Truck Service, Inc., 34 N.W.2d 313, 317 (S.D. 1948) (emphasis added). The South Dakota Supreme Court further explained that this discovery must be actual, not just imputed:

> The great weight of judicial authority denies the application of the last
> clear chance doctrine in the situation where the defendant, while under

> a duty to discover the danger to the injured person, did not actually discover it and the injured person was physically able to escape from the peril at any time up to the moment of impact.

Id. (internal quotations omitted).  Although Aungie arguably should have known that Good Low was somewhere in the alfalfa field, there is no evidence that he actually discovered that Good Low was in his path prior to Good Low raising his head above the alfalfa.  When Good Low raised his head, Aungie was only a few feet away from Good Low and could not stop his vehicle before striking him.

The district court did find that Aungie was traveling faster than he should have been in light of the low visibility in the alfalfa field.  Even if Aungie's prior negligence was the reason he could not avoid hitting Good Low, however, the last clear chance doctrine still does not apply.  In Nielsen, the South Dakota Supreme Court adopted Section 480 of the Restatement of Torts.  Nielsen, 299 N.W. at 76.  Comment *h* in Section 479 of that text, which also deals with the last clear chance doctrine, states:

> If the defendant, after discovering the plaintiff's peril, does all that can reasonably be expected of him, the fact that his efforts are defeated by antecedent lack of preparation or a previous course of negligent conduct is not sufficient to make him liable.

Restatement (First) of Torts § 479 cmt. *h* (1934).  The comment goes on to provide an example that is especially relevant to this case:

> [I]f a railroad train is exceeding the statutory speed limit in approaching a level crossing, but the engineer does not see the plaintiff's helpless peril on the crossing in time to stop the train, the fact that the train could have been stopped in the distance between the two points if it had been going at the lawful speed is not enough to make the defendant liable to the negligent plaintiff.

<u>Id.</u>  For the foregoing reasons, we find that the last clear chance doctrine does not allow Good Low to recover.

III. Conclusion

We find no clear error in the district court's determination that Good Low's negligence was more than slight when compared to Aungie's.  We also conclude that the last clear chance doctrine is not applicable to this case and thus does not allow Good Low to recover damages despite his own negligence.  Accordingly, we affirm the judgment of the district court.

_____