FOSSUM, Administrator, Respondent v. ZURN, Appellant

(100 N.W.2d 805)

(File No. 9781. Opinion filed January 30, 1960)

**Gene E. Pruitt, Acie W. Matthews,** Sioux Falls, for Defendant-Appellant.

**Samuel W. Masten,** Canton, for Plaintiff-Respondent.

RENTTO, J. This litigation was brought to recover for the wrongful death of Gordon Fossum resulting from an intersectional automobile collision. The verdict was in favor of the plaintiff. In answers to special interrogatories the jury found plaintiff's damage to be in the sum of $20,000 and that decedent's own contributory negligence was 10% of the total combined negligence proximately causing his injuries and the defendant's negligence was 90% of this total. Accordingly, the jury under our comparative negligence law reduced plaintiff's damages in this proportion and awarded him $18,000 for which judgment was entered. Defendant's motion for judgment notwithstanding the verdict was denied. This appeal is from both such judgment and order.

Defendant claims that the court committed prejudicial error in not permitting him to tell the jury about the alcoholic content of a blood sample taken from the plaintiff's decedent as revealed by a chemical analysis thereof, until the reliability of such test had been established. He also contends that his motion for judgment notwithstanding should have been granted because (1) the plaintiff's decedent as a matter of law was guilty of contributory negligence more than slight which under our law would deny him recovery, and (2) since the alcoholic content of decedent's blood was .15% he was operating his motor vehicle while under the influence of intoxicating liquor and was contributorily negligent to an extent more than slight as a matter of law, and (3) contributory negligence of 10% is more than slight as a matter of law.

In support of his defensive claim of contributory negligence defendant alleged, among other things, that plaintiff's decedent operated his motor vehicle while in an intoxicated condition. Plaintiff had learned that a sample of his decedent's blood had been taken from his body by a physician who was directed to do so by the sheriff, without any other person's consent, some three hours after his death and that the state chemist's analysis showed it to have an alcoholic content of .15% by weight. Anticipating that this test would be placed before the jury, plaintiff, before the prospective jurors were examined, moved that evidence of its materiality and admissibility be presented to the court before such fact was injected in any manner before the jury.

Because of the circumstances under which the sample of blood was taken the trial judge indicated that he had grave doubts as to the reliability of the test and directed that no mention of it be made in defendant's opening statement or while plaintiff was presenting his case. He further suggested that evidence be presented to him as to the validity and authenticity of such test before the result was mentioned to the jury. He said this should be done before completion of plaintiff's case. Defendant was given permission to make an additional opening statement concerning this matter, if, after the court had heard such evidence he was satisfied of its admissibility.

■■ Concerning the conduct of civil jury trials, SDC 33.1307 so far as here material provides:

"In civil jury cases the jury shall first be selected and sworn, and the trial shall then proceed in the following order, subject to the right of the Presiding Judge, for good cause shown, otherwise to direct the order of statements, proof, and argument:

"(1) The plaintiff or party having the burden of proof shall state the issues and the general nature of the evidence he expects to produce in substantiation of the issues by stating what he claims the issuable facts to be without argument and without naming or identifying any particular witness or exhibit by which he expects to prove any of such issuable facts;

"(2) The defendant or party not having the burden of proof shall then state the issues and the general nature of the evidence he expects to produce in substantiation of the issues by stating what he claims the facts to be, without argument and without naming or identifying any particular witness or exhibit by which he expects to prove any of such issuable facts;"

While this is a more detailed statement of the contents of an opening statement than was formerly provided by our law, its purpose and object is still merely to assist the jury to understand the evidence as it is introduced and the bearing it has on the issues involved. Egan v. Dotson, 36 S.D. 459, 155 N.W. 783. It should not be a detailed statement of the evidence by which counsel expects to prove the facts of his case. Under our statute a party makes known the general nature of his evidence by stating what he claims the issuable facts to be.

■■ In approaching the problem presented we start from the premise that obviously one may not in his opening statement refer to matters that are inadmissible and where

such is done the court has the right to interfere. See Wigmore on Evidence, 3d Ed., § 1808. In this area the trial judge is clothed with some measure of discretion. 53 Am. Jur., Trial, § 455; 88 C.J.S. Trial § 161; Abbott's Civil Jury Trials, 5th Ed., § 97 and Bower's Judicial Discretion of Trial Courts § 281. He does not have to be absolutely convinced of its inadmissibility but may properly take action if he has serious doubt concerning it.

Nor must he wait until the questionable matter is referred to in the opening statement if it is sooner called to his attention. At the 1959 Institute for California Judges the panel on "Preliminary Matters and Trial Proceedings" strongly supported the view that a trial judge should pre-try questions as to the admissibility of evidence that would arise during the trial. Cal.L.Rev. Vol. 47, p. 703. If the questioned evidence is inadmissible this method avoids the injection of prejudicial matter into the trial while the other course leads either to a mistrial or an admonition to disregard—the efficacy of which is questioned by many respected members of the bench and bar. Which course the trial judge follows is a matter committed to his discretion.

Before plaintiff's case was completed the court held an evening session, without the jury, at which defendant's expert witness testified at length concerning the validity of the test in question. This satisfied the court of its reliability and it later became a matter in evidence on the defendant's case without any additional opening statement being made. The correctness of its admission is not presented by this appeal. That the court's original doubt was not confirmed does not, in our view, render his first ruling an abuse of discretion. It is manifest in the record that when this matter was first brought to his attention he entertained serious and genuine misgivings as to its validity. His effort to insure a fair trial did not deprive the defendant of a fair trial.

In considering defendant's next contention we must accept that version of the evidence that is most

favorable to the plaintiff. This means that every contro-
verted fact, of which there are few in this record, must
be resolved in favor of the successful party and he must
also be given the benefit of every favorable inference that
can fairly be drawn from the evidence. Peters v. Hoisington,
72 S.D. 542, 37 N.W.2d 410. The record establishes that
defendant Zurn on May 7, 1958 was using his personal
automobile, a 1957 four-door Dodge Sedan, to make deliver-
ies of baby chicks and feed. It was a clear day and the
roads were dry. On the trip in question he was alone but
had two 50-pound bags of feed on the floor of the right
front seat and on the seat to his right had a pile of three
cardboard cartons containing baby chicks. Each of these
was about 18 inches wide, 22 inches long and about 7¼
inches deep. The top of these was about half way up the
window on the righthand side. Zurn was little of stature
being only 5 feet 7 inches tall. He was driving south in Lin-
coln County on a one-lane graveled township road whose
traveled portion is about 20 feet in width. The accident
occurred at the intersection where this road crosses the
Klondike road, a county road running east and west and
which is a two-lane graveled road with a traveled portion
about 26 feet wide. The decedent, also alone in his car,
was traveling east on this latter road. The accident happen-
ed between 5:15-5:30 p.m. and resulted in the almost in-
stantaneous death of plaintiff's decedent.

The township road in question is crossed by a railroad
about 1,335 feet north of the intersection in which the
collision took place. When Zurn went over the railroad
crossing going south he was traveling about 30 miles per
hour. At that point he observed a car coming from the
west on the Klondike road about three blocks west of the
intersection. This was to his right. He was not able to
estimate its speed. His view to the west was unobstructed
except for the cardboard cartons in the front seat, but he
did not look that way again until he was about 30 or 40
feet north of the intersection at which time he was traveling
about 50 miles per hour. At that point he saw the Fossum
car about 50 feet west of the intersection traveling at a

speed of about 60 miles per hour in the south lane of the Klondike road. Just before the accident Zurn swerved his car to the east but the front end of his car struck the left rear portion of the Fossum car leaving its tire imprint thereon . At about that same time Fossum swerved his car to the south. There were no skid marks at the point of impact which was in the southeast quarter of the intersection. The front end of the Fossum car was not damaged.

From this factual basis counsel for the defendant argues that the decedent was guilty of contributory negligence as a matter of law which is more than slight because the accident occurred in an intersection where the vision of both drivers was unobstructed. There is no evidence in the record as to how decedent operated his vehicle during the period between the first and second time the defendant saw his car nor as to whether or when the decedent observed the defendant's vehicle as it approached the intersection. Accordingly, it is presumed that the decedent, acting on the instinct of self-preservation, exercised due care. McKiver v. Theo. Hamm Brewing Co., 67, S.D. 613, 297 N.W. 445. While this presumption is not evidence it does serve as and in the place of evidence until prima facie evidence has been adduced by the opposite party. Accordingly, it became the duty of the defendant to go forward with the evidence concerning the decedent's contributory negligence.

So far as here material SDC Supp. 44.0318 provides:

> "When two vehicles approach or enter an intersection at approximately the same time, the driver of the vehicle on the left shall yield the the right of way to the vehicle on the right * * The driver of any vehicle traveling at an unlawful speed shall forfeit any right of way which he might otherwise have hereunder."

In applying this statute we have held that in determining the right of way it is without legal significance which car actually entered the intersection first if it appears that

they approached or entered it at approximately the same time. Smith v. Aspaas, 71 S.D. 111, 21 N.W.2d 878. We have also said that they are approaching it at approximately the same time whenever the two vehicles are in such a relative position that upon an appraisal of all the factors in the situation it should appear to a man of ordinary prudence approaching from the left that there is danger of collision if he fails to yield the right of way. Fester v. George, 71 S.D. 424, 25 N.W.2d 455. In the circumstances of this case it was for the jury to determine whether these parties entered this fatal intersection at approximately the same time.

 If they did, and it would seem to us that the jury would be justified in so finding, then it was the duty of the defendant to yield the right of way to the decedent. No claim is made that decedent had forfeited his right of way. Corollary to this rule is the further principle that the driver approaching from the right may proceed toward and into the intersection under the assumption that the driver from the left will yield the right of way. But when the driver on the right as a reasonable man would recognize that the driver on the left does not intend to yield the right of way, then it becomes his duty to do what a reasonable man would do in such an emergency to protect himself and others from harm. Campbell v. Jackson, 65 S.D. 154, 272 N.W. 293. It follows that the decedent was under no duty to change his speed, stop or alter his course until he had discovered, or as a reasonable person should have discovered that the defendant was not going to yield. Obviously this could not be done until some time after the defendant approached within reasonable proximity of the intersection. After that there was little time remaining to form a judgment and take evasive action.

In other words, the critical determination is—when should the decedent as a reasonable man have determined that the defendant did not intend to yield the right of way? Defendant claims that this determination was a question for the court and that after such determination the

court should have proceeded to determine that decedent's subsequent conduct did not measure up to the standard of conduct required of him, and that his deviation from that standard was more than slight negligence. We do not share these views. Because of the paucity of direct evidence on these features their determination would be largely a matter of permissible inferences. Under our comparative negligence law, SDC Supp. 47.0304-1, we have said that this determination is for the court in those cases "Where undisputed facts are of such a nature that reasonable men could not differ as to whether exhibited conduct conforms to established conduct" and that it must be submitted to the jury "Where reasonable minds might draw different inferences or conclusions from facts proved". Roberts v. Brown, 72 S.D. 479, 36 N.W.2d 665, 667. Accordingly, under the circumstances of this case we think the court properly left the determination of decedent's contributory negligence and the extent thereof to the jury.

In Stratton v. Sioux Falls Traction System, 55 S.D. 464, 226 N.W. 644, 648, this court wrote:

"It is contended by appellant that deceased was guilty of contributory negligence as a matter of law. Before this court can say deceased was negligent, under the circumstances, the facts from which the conclusion is to be drawn must be established without dispute. We have the motorman's version of what happened, but nothing from the viewpoint of deceased. He was alone, and did not survive long enough to make any statement. What influenced his actions, and what precautions, if any, he took for his own safety, nowhere appears. Negligence cannot be presumed. It is for the jury to determine what the facts are, from all of the evidence and circumstances surrounding the accident."

Much the same must be said of the situation we are here considering.

Defendant's next proposition is that because decedent's blood had an alcoholic content of .15% by weight it follows as a matter of law that he was operating his vehicle while under the influence of intoxicating liquor and was contributorily negligent to a degree more than slight. On the question of intoxication there was other evidence. that the jury could consider. About a quarter to four that afternoon decedent had drunk two vodka sours at a bar in Sioux Falls after which he drove his car to the place of the accident at a speed of about 50 miles per hour. A minute or two before the accident he stopped at his father's place and talked with him. It was the father's opinion that he was not under the influence of alcohol at that time. Also his family doctor driving to Sioux Falls that day observed the decedent as he passed in his car and it was also the doctor's opinion that decedent was not under the influence of alcohol. We think it was for the jury to say on all of this evidence and the other facts and circumstances in the case, whether the decedent was under the influence of alcoholic liquor.

The author of the annotation in 159 A.L.R. 209 at p. 225 states the rule thus:

> "It has been recognized that the opinions of qualified experts, based upon the percentage of alcohol in an individual's blood or other body fluid, as to whether the individual was intoxicated, while relevant and competent, are not conclusive upon the issue of intoxication, and are to be considered together with the other evidence in the case upon that issue."

In Peters v. Hoisington, supra [72 S.D. 542, 37 N.W.2d 413], it is written: "It does not follow from evidence that a person had been drinking and thereafter drives his car that as a matter of law he was driving while under the influence of intoxicating liquor." In the same case this court characterized an instruction which emphasized the fact that intoxication is not negligence as a matter of law, as a correct statement of the law. However, evidence of intoxication is admissible as a circumstance to be con-

sidered with the facts in evidence in determining the question of negligence.

█ This argument in effect urges that the alcoholic content of decedent's blood as revealed by the chemical analysis and the opinion of his medical expert that one with such alcoholic level is under the influence of alcohol, constituted physical and scientific facts which should be given a controlling effect. We do not agree. While the blood sample and its alcoholic content are physical facts the opinion of the doctor is expert testimony and its weight, as such, is for the jury. Kuroske v. Aetna Life Ins. Co., 234 Wis. 394, 291 N.W. 384, 127 A.L.R. 1505. In some states statutes have been enacted declaring the evidentiary effect of such tests. We have such a statute, SDC Supp. 44.0302-1, but its operation is limited to criminal prosecution thereunder. Hoffman v. State, 160 Neb. 375, 70 N.W.2d 314. Accordingly, this enactment is of no moment here.

█ Defendant's next point is that since the jury found decedent's contributory negligence to be 10% of the combined negligence that it was more than slight as a matter of law. We have herein held that it was for the jury to determine whether decedent's contributory negligence was less than slight. This, it did. Their characterization of such contributory negligence as 10% of the combined negligence does not make it more than slight. Since no objection was made at the trial to the submission of these special interrogatories the propriety of such action is not presented by this record.

Affirmed.

All the Judges concur.