BEHRENS, Respondent v. NELSON, Appellant

(195 N.W.2d 140)

(File No. 10924. Opinion filed February 29, 1972)

**Morgan & Fuller,** Mitchell, for defendant and appellant.

**Shandorf & Bleeker, D. R. Bleeker,** Mitchell, for plaintiff and respondent.

HANSON, Presiding Judge.

Following a motor vehicle accident the plaintiff, Marlo J. Behrens, brought this action to recover damages for personal injuries and property damage from defendant, Ellen M. Nelson. The jury awarded plaintiff a verdict of $9,000 and defendant appeals from the judgment and from the order denying her motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The accident occurred on October 26, 1968 at about 2:00 p. m. on a graveled road in Miner County. It was the opening day of pheasant season. Plaintiff left Mitchell in the afternoon in his 1965 Ford sedan with three companions on a hunting trip. They were road-hunting and had been proceeding north on an oiled road leading to the town of Fedora. When they reached the intersection with the graveled road they turned right and proceeded east at a speed of not over 25 miles per hour. Shortly after turning east they spotted a pheasant ahead in the north fence row. Plaintiff coasted up and stopped his car on the road alongside the bird. Within seconds thereafter his car was hit from the rear by defendant's car.

Defendant, with two companions, a mother and child, had been proceeding east on the graveled road to visit friends living on a farm in the vicinity of the accident. Defendant stopped her automobile at the intersection with the oiled road and waited while plaintiff approached and turned east. She then proceeded across the intersection and followed plaintiff on the graveled road for about half a mile. Visibility was good and plaintiff's car was never out of sight. The day was clear and the road was dry. When defendant realized plaintiff had stopped in the road ahead she applied her brakes and turned left, but the right front of her car collided with the left rear of plaintiff's car causing the injuries and damages complained of. Defendant's car left skid marks for a distance of 75 feet before the point of impact and her car came to a stop 160 feet beyond the point of collision. The complaint alleges defendant to be negligent with respect to (1) speed, (2) lookout, (3) failure to turn to avoid the accident, and (4) to seasonably apply her brakes.

■ At the trial plaintiff was the first witness to testify. During the course of his direct examination he was asked to relate the conversation he had with Mrs. Nelson following the accident. He replied:

"We then exchanged — I asked her if she had a driver's license; she said yes. She asked if I had one; I said yes. We exchanged information about makes of cars, in-

surance companies, and agreed at that point that the damage was such that we would have to call an investigating officer."

Defendant then moved the court, out of the presence of the jury, to grant a mistrial as plaintiff had injected the question of insurance coverage by his own testimony to defendant's prejudice. The denial of such motion is alleged as error.

 It is a general rule that unwarranted evidence a defendant is insured against liability is inadmissible in personal injury and death actions. Such evidence is ordinarily not relevant to any issue and may influence jurors to render verdicts in favor of plaintiffs upon insufficient evidence and to enhance the amount of such verdicts. See Anno., Showing As To Liability Insurance, 4 A.L.R.2d 761.

In the present action the question of insurance coverage was not competent, relevant, or material to any issue. Surprise and inadvertence is not claimed to justify its admission. During oral argument before this court counsel for plaintiff stated he admonished his client not to mention insurance coverage in his testimony. In view of this, we can only assume the subject of insurance coverage was intentionally and deliberately injected by plaintiff for the sole purpose of influencing the jury in his favor. The circumstances are not unlike those existing in Zeller v. Pikovsky, 64 S.D. 544, 268 N.W. 729, in which the court held the failure to grant a mistrial constituted reversible error.

 One other alleged error which may be asserted on retrial merits consideration. This relates to defendant's contention that plaintiff was guilty of negligence as a matter of law which proximately caused or contributed to the collision by his failure (1) to observe and determine if he could stop on the highway safely, (2) to signal his intention to stop, and (3) to stop on the main traveled portion of the roadway without leaving the required clear passageway contrary to the requirements of SDCL 32-26-1, 32-30-1 and 32-30-2.

By his own admission plaintiff did not determine if he could stop in safety and if the operation of any other vehicle would be affected by his stopping. He did not see defendant's automobile at any time before the impact and from the time the pheasant was spotted ahead he never looked in the rearview mirror to see if there were any cars following him. His conduct in this regard clearly constituted negligence as a matter of law.

Plaintiff asserts he flashed his brake light as a warning to defendant as he gradually came to a stop. His testimony on direct examination in this regard is as follows:

"Q Did you put on your brakes?

A Yes. I would have applied the brakes to stop the car but we were going —

\* \* \* \* \* \* \* \*

Q Did you give any signal of your stop?

A I made no hand signal. I was watching the bird. I was looking, preparing to stop, and I assumed that the brake lights would give adequate —

\* \* \* \* \* \* \* \*

Q Tell the jury how you applied your brakes when you prepared to stop?

A At a slow period because we had seen the bird at a distance of probably maybe seventy-five to a hundred feet, and we stopped the car then slowly so that we would coast up to the bird rather than — I couldn't stop immediately and I couldn't put any pressure on the brake or we would have stopped prior to the time that we got to the bird, so we had stopped slowly, came to a gradual stop."

Mr. Hallstrom, who was riding in the front seat of plaintiff's car, was asked to describe the manner in which Mr. Behrens applied his brakes. He replied: "Well, I can't tell you exactly. All I can

say is we've road-hunted for years and years and I know we come to gradual stops because we've always done this before. You slam on the brakes, the pheasant goes."

■ From such evidence it is difficult to infer plaintiff pumped his brakes as a warning signal to defendant of his intention to stop as he was completely oblivious of her presence. As this court observed in Wallace v. Brende, 67 S.D. 326, 292 N.W. 870.

> "when brakes are applied in such a manner that immediately upon their application the car is struck by a vehicle following from the rear, the mere fact that the car was equipped with this mechanical appliance does not absolve the driver of the car from negligence. Had this driver made the proper observation, he would have known he could not have stopped his car in the manner in which he did without the probability of some accident or injury occurring, and we are of the opinion that the failure to make this observation under the facts presented constituted negligence. Under the testimony of Krogstad, himself, his car was struck the minute he applied the brakes. Quite obviously under these circumstances the mechanical appliance with which the car was equipped served no useful purpose."

Plaintiff also testified he "pulled over to the right side of the road and stopped the car." However, pictures of the position of the car after the impact show it standing a northeast -southwest angle in the traveled portion of the roadway. This is verified by the testimony of the Deputy Sheriff of Miner County who investigated the accident shortly after its occurrence. When asked where plaintiff's car was sitting when he arrived at the scene of the accident he replied "It was in his traveled portion of the road, just with a slight turn to it." There is no evidence to show it was impractical for plaintiff to stop or park his car off the main traveled portion of the highway or as closely as possible to the right hand edge or curb of the road as he was obligated to do. See Haase v. Willers Truck Service, 72 S.D. 353, 34 N.W.2d 313.

In the event the evidence on retrial similarly shows plaintiff's failure to conform to any of the above mentioned statutory standards of conduct defendant would be entitled to have the issues narrowed by an instruction conforming to such evidence in substantially the following form as requested by defendant and refused by the court:

"You, the jury, are instructed that the Plaintiff, Marlo Behrens, is guilty of negligence as a matter of law for his failure to ascertain if the stopping of his motor vehicle on the paved and improved portion of the public highway could be made with safety before so stopping, for his failure to signal his intention to so stop his vehicle, and for his failure to leave a minimum of twenty foot clearance to the left of his vehicle while the same was stopped and parked upon the improved and main traveled portion of the public highway; that the only issue regarding such contributory negligence is whether or not it was the proximate cause of the injury sustained and whether or not it was more than slight in comparison to the negligence of the defendant, if any."

Reversed and remanded for a new trial.

WINANS and WOLLMAN, JJ., concur.

BIEGELMEIER, J., concurs in part and dissents in part.

DOYLE, J., not participating.

BIEGELMEIER, Judge (concurring in part and dissenting in part). .

I concur with the opinion insofar as it grants a new trial because of the apparent deliberate statement of plaintiff as to insurance.

I cannot agree with that part of the opinion which, conditioned on the evidence at the new trial, directs giving of the instruction

set out and should state my reasons for this conclusion. No such instruction was presented in writing to the court as required in RCP 51(a), which provides:

> "All requests for instructions shall be in writing and in duplicate, and shall be presented to the court on or before the time fixed for settling instructions. * * *
>
> All requested instructions which are refused by the court shall be so endorsed by the court on the numbered copy. An additional numbered copy of each requested instruction shall be furnished to opposing counsel."

These rules "are the law of this state, and binding, as such, upon the courts to which they apply." Reasons for requiring strict conformance thereto appear in the opinion of Heyl v. Waggoner, 58 S.D. 420, 236 N.W. 375, where the court forcefully condemned the giving of oral instructions where written instructions were required. In the present case on page 137 of the transcript the following appears:

> "MR. MORGAN: I would ask leave of the court to propose instructions orally, and will provide you with a copy as soon as I can — if the court would permit me to put them in orally.
>
> "THE COURT: I'll permit you."

The propriety of this so-called, proposed, but oral instruction is not presented to the court and we so held as recently as December 17, 1971, in State v. Greene. 86 S.D. 177, 192 N.W.2d 712.

The requirements of first seeing that the stopping can be made in safety, the giving of the signal, etc., were included by the court in Instruction 13, and the requirement of a 20-foot clearance was included in Instruction 14. The instructions given, which did not invade the province of the jury as the suggested instruction may, were:

## "INSTRUCTION NO. 13

The court instructs the jury that a driver of any vehicle upon a highway, before starting, stopping, or turning from a direct line, shall first see that such movement can be made in safety; and whenever the operation of any other vehicle may be affected by such movement, he shall give a signal plainly visible to the driver of such other vehicle of his intention to make such movement. A signal herein required shall be given either by means of the hand and arm or by an approved mechanical or electrical signal device."

## "INSTRUCTION NO. 14

It is unlawful for any person to park or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled portion of any highway, when it is practical to park or leave such vehicle standing off of the paved or improved or main traveled portion of the highway. In no event shall any person park or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear or unobstructed width of not less than twenty feet upon the main traveled portion of such highway opposite such standing vehicle shall be left for free passage of other vehicles thereon, or unless a clear view of such vehicle may be obtained from a distance of two hundred feet in each direction upon such highway."

Further, the testimony of the deputy sheriff and plaintiff who measured the road was that it was only 21 or 22 feet wide, so that the stopping of a car which is six feet wide on this road would only leave about 15 or 16 feet. I do not believe the legislature intended to prohibit the stopping of an automobile on a road 21 or 22 feet wide, which would be the effect of applying this statute to such a road, nor that the stopping of this car for a few seconds was within the words "park" or "leave standing" of SDCL 32-30-2. It must be remembered that the cited statute, now separate, was a part

of SDC 44.0324 which included SDCL 32-30-1, and that section referred to the parking "when it is practical to park or leave such vehicle standing off of the paved or improved or main traveled portion of the highway." In any event, his automobile was close to the right edge of the highway, and the evidence shows there was ample room for defendant to pass to plaintiff's left on this bright, sunny day. From the pictures it appears there was room for two cars to pass. The cause of this accident was not the position of the plaintiff's car, but whether the stopping of it was the cause of the accident. See the comment of the court in Griebel v. Ruden, 61 S.D. 507, 249 N.W. 810.

> "But assuming that plaintiff's car stood where defendant claims it stood, and assuming that a third car did approach from the west, defendant is still without excuse for running into plaintiff's (stopped) car. There was at least fifteen feet of pavement and 4 to 5 feet of shoulder south of plaintiff's car. This allowed an abundance of room for the truck and the car from the west to pass each other without interfering with plaintiff's car."

Here there were no cars approaching, and plaintiff had about 15 feet of clear, uninterrupted, dry road to pass safely.