BECK, Sp. Adm. Estate of Betty Beck, Respondent v.
WESSEL, Appellant

(237 N.W.2d 905)

(File No. 11541. Opinion filed January 22, 1976)

**Jack R. Von Wald, Robbins & Van Wald**, Selby, for plaintiff and respondent.

**Paul O. Kretchmar**, Eureka, **Arend E. Lakeman**, Mobridge, for defendant and appellant.

DUNN, Chief Justice.

This is an appeal from a $75,000 verdict awarded to Betty Beck's estate for the benefit of her three minor children in the Circuit Court of Campbell County which was then in the Sixth Judicial Circuit. Betty Beck was killed in a head-on collision on December 25, 1971, on Highway 83 near Mound City, South Dakota, between automobiles driven by Marvin Beck (Betty's husband) and defendant August Wessel. Defendant Wessel moved for a directed verdict and for judgment n. o. v., and both motions were denied by the trial court. Defendant appeals claiming that the trial court erred in (1) refusing defendant's motions for a directed verdict and judgment n. o. v., (2) failing to instruct the jury under South Dakota's comparative negligence statute, (3) not reducing the jury verdict in that Marvin Beck and August Wessel were joint tort-feasors, and (4) answering a question from the jury without first consulting with the parties' attorneys. We affirm.

This litigation arose as a result of an automobile accident which took place on December 25, 1971, near Mound City, South Dakota. At about 11:30 a.m. a car driven by Marvin Beck collided almost head-on with a car driven by defendant Wessel. The two vehicles were traveling in opposite directions on U.S. Highway 83.

The day was clear and sunny, but a strong wind was blowing newly fallen snow onto the highway creating some visibility problems. The Beck vehicle contained Marvin Beck, his wife Betty, and their three children. They were proceeding north on Highway 83, having just left Mound City. Immediately in front of the Beck vehicle in the same lane of travel was a car pulling an Airstream travel trailer. Mr. Beck decided to pass the car-trailer and pulled out twice to check for traffic in the southbound lane. Seeing none, he pulled out to pass. The Beck vehicle collided with the Wessel vehicle in the southbound lane approximately 15 to 20 feet ahead of the car pulling the Airstream.

The defendant and his wife were in the Wessel vehicle. They were traveling south on Highway 83. Because of the blowing

snow, defendant had a hard time seeing the painted center line of the road and he admitted crossing over the center line several times prior to the collision. Captain William Marshall was driving the car-trailer combination. He testified that when he first saw defendant's vehicle it was one-half to two-thirds of the way into the northbound or wrong lane of travel. Marshall's wife testified that the Wessel vehicle was completely over into the wrong lane. Captain Marshall began to take evasive action by slowing down and moving over to the shoulder of the northbound lane. Approximately 100 yards before reaching the Marshall vehicle the Wessel car moved back over into its proper lane of travel.

Defendant Wessel testified that he saw the Beck vehicle passing and attempted to get into the southbound ditch, but he was unsuccessful in avoiding the collision. Mr. Beck testified that he did not see the Wessel vehicle until an instant before impact. He had no time to take evasive action or even to put on his brakes.

The evidence indicated that defendant Wessel was traveling at a speed of between 40 and 45 m.p.h. at the time of the collision. It was estimated that the Beck car was accelerating to get around the Airstream trailer and was traveling at between 50 and 55 m.p.h. The speed limit at the point where the accident occurred was 45 m.p.h.

Betty Beck and Mrs. Wessel were killed in the collision. Donald Beck, special administrator of Betty Beck's estate, commenced a wrongful death suit against defendant Wessel. Subsequently, a wrongful death action on behalf of Mrs. Wessel's estate was started against Marvin Beck. The two cases were consolidated and tried together. The jury found Marvin Beck liable in the Wessel case and found defendant Wessel liable in the Beck case. In the Beck case the jury awarded Betty Beck's estate damages in the amount of $75,000. The money was awarded for the benefit of Betty Beck's three minor children. Marvin Beck was not allowed to share in the award because of the jury's determination that his negligence was also a proximate cause of his wife's death. This appeal concerns only the jury's verdict in the Beck case and the judgment of the court against Wessel. He

raises numerous issues on appeal, but we choose to discuss only four in this opinion.

Defendant first contends that there was insufficient evidence that his actions were negligent and constituted one of the proximate causes of the accident. He says that as a matter of law the trial judge should have directed a verdict in his favor or granted his motion for judgment n. o. v.

We have carefully reviewed the record, keeping in mind that in reviewing to determine if, as a matter of law, motions for a directed verdict or judgment n. o. v. should be granted, the evidence must be viewed in the light most favorable to the plaintiff. In addition, we must give the plaintiff the benefit of every inference and every controverted fact must be resolved in plaintiff's favor. Fossum v. Zurn, 1960, 78 S.D. 260, 100 N.W.2d 805; Weidner v. Lineback, 1966, 82 S.E. 8, 140 N.W.2d 597.

We are convinced that the trial judge was correct in denying both defendant's motions. The record reveals that the defendant's automobile crossed over the center line so that at the very minimum half the auto was in the wrong lane of travel. He continued to drive his car in the wrong lane until approximately 100 yards before impact. Marvin Beck testified that he did not see defendant's car until an instant before impact. With the adverse driving conditions that already existed that day, it is easy to surmise that Marvin Beck could not see defendant approaching in the distance if defendant's car was wholly or partially in the wrong lane of travel. The trial judge quite properly allowed the question of defendant's negligence and the proximate cause question to go to the jury.

Defendant next makes the argument that the trial court should have instructed the jury on South Dakota's comparative negligence statute. This statute is found at SDCL 20-9-2. We do not deem it necessary that the statute be specifically set out here. The essential point to be made is that a comparative negligence instruction should not be given unless there is some evidence of negligence on the part of the plaintiff, or in this case plaintiff's decedent. The record reveals that Betty Beck was merely a

passenger in the car driven by her husband. Granted, the jury did find that Marvin Beck was negligent, but, absent evidence to the contrary, the negligence of the operator of a motor vehicle cannot be imputed to a passenger simply because they happen to be husband and wife. Dehnert v. Garrett Feed Co., 1969, 84 S.D. 233, 169 N.W.2d 719. Here there is no evidence that Betty Beck was exercising any control over the operation of the Beck vehicle. Therefore, there is no negligence on her part to be compared with defendant's negligence, and the comparative negligence instruction was properly refused.

Defendant's third argument is based on the South Dakota uniform contribution among tort-feasors law at SDCL 15-8-11 through 15-8-21. He contends that even assuming he was negligent he and Marvin Beck were joint tort-feasors and thus jointly and severally liable for Betty Beck's wrongful death. He urges that plaintiff's recovery against him should be reduced by one-half since Marvin Beck was a joint tort-feasor.

We feel that this issue can be resolved without resort to further interpretation of our uniform contribution among tort-feasors law. Here plaintiff had no legal recourse against Marvin Beck because of our automobile guest statute which is codified at SDCL 32-34-1. Marvin Beck was not named as a defendant in this action. There can be no contribution nor can there be a reduction in the damages which defendant is obligated to pay. As we stated in Burmeister v. Youngstrom, 1965, 81 S.D. 578, 139 N.W.2d 226:

> "We believe it abundantly clear that the right to contribution is determined by whether there is joint or several liability rather than by the presence of joint or concurring negligence. There can be no right to contribution unless the injured party has a possible remedy against two or more persons." 81 S.D. at 586, 139 N.W.2d at 231.

Because of the existence of the guest statute, Marvin Beck and defendant were not joint and severally liable to plaintiff. There is no right to contribution and plaintiff is entitled to recover all his damages from the defendant.

This case was tried to a jury at the courthouse in Mound City, South Dakota. Instructions were given to the jurors by the court and they began their deliberations at approximately 3:55 p.m. on May 16, 1974. At approximately 4:15 p.m. the jury sent a note to the judge asking, "Can you tell us the amount of insurance each party has?" The attorneys for the parties were not in the courtroom, having apparently adjourned to one of the local business establishments to await the verdict. Without attempting to locate the attorneys, the judge simple wrote "No" on the same piece of paper as the inquiry and returned the note to the jury room.

Defendant argues that this was error and that because of it a new trial must be granted. He contends that the judge's actions in answering the note were contrary to the language of SDCL 15-6-51(a). The sixth paragraph of that section is the one which is relevant and it reads as follows:

> "After the jury have retired for deliberation if there be a disagreement between them as to any part of the testimony or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court the information required, if given, must be given in the presence of, or after notice to the parties or counsel, and the instruction given shall be taken down by the court reporter."

There is no doubt that in a technical sense the court erred in answering the note sent by the jury without consulting counsel and following the other procedures set out above. If the jury had asked for an additional instruction on the law of the case or for an explanation of an instruction already given, we might be disposed to remand for a new trial.

Here, however, the situation was quite different. This jury was inquiring about the amounts of liability insurance owned by each party. This was not their concern in deliberating on the questions of liability and damages. Had counsel or any other of the witnesses mentioned liability insurance during testimony or

arguments, a mistrial would probably have had to be declared. Behrens v. Nelson, 1972, 86 S.D. 312, 195 N.W.2d 140. In the instant case one or more members of the jury apparently raised the possibility that the parties were insured. The judge understandably felt when he received the jury's note that it was necessary to get the jury away from the issue of liability insurance and back onto the issues of liability and damages.

We hold that while the judge erred in not consulting counsel, the error was not prejudicial in this case and does not merit a reversal. His "No" to the question was the only answer that could have been given under the circumstances. He certainly could not have answered "yes" and then revealed to the jury the limits of the liability insurance policies involved. Indeed, if he had consulted counsel and called the jury back into open court to admonish them not to consider liability insurance, he may well have compounded the problem by making a much larger issue of liability insurance in the minds of the jury. In the absence of other evidence, we cannot say that the judge's error was prejudicial and we decline to remand for a new trial. A conference between the judge and all the attorneys involved could not have come up with a better answer than the simple "No" which was sent back to the jury.

We consider the defendant's other assignments of error to be without merit. The judgment of the circuit court is affirmed.

WINANS and DOYLE, JJ., concur.

WOLLMAN and COLER, JJ., concur specially.

WOLLMAN, Justice (concurring specially).

Although I agree that the judgment should be affirmed, I do question whether the simple "No" given by the trial court in response to the jury's question about liability insurance was the best answer that could have been given. Had counsel been notified and given an opportunity to express their views concerning the proper answer to be given to this question, I have no doubt that a more complete answer would have been proposed by

them and probably given by the court. At the very least, the answer should have instructed the jury that the question of liability insurance was not an issue in the case and that they should not consider the matter of insurance in determining the questions of liability and the amount of damages.

The record reveals that the jury retired to deliberate at 3:55 p.m. on May 16, 1974, and that at 4:15 p.m. they submitted the question concerning the amount of insurance. According to appellant's brief, counsel for appellant learned of the question and the answer given by the trial court approximately an hour and a half after the question had been submitted and answered. At 9:50 p.m., the jury requested clarification of the special interrogatories, at which time the court called the jury back into the box and gave them further instructions in the presence of counsel. I would hold that because counsel for appellant did not make a request that the jury be given an instruction that they were not to consider the question of insurance in deliberating upon the questions of liability and damages at a time when it would have been possible for the court to have given such a supplementary instruction, counsel should be held to have waived the right to notice and presence provided by SDCL 15-6-51(a). Cf. Wittmeier v. Post, 78 S.D. 520, 105 N.W.2d 65.

I am authorized to state that Justice COLER joins in this special concurrence.