2005 WY 84

**Matt BECK and Pam Beck, Appellants (Plaintiffs),**

v.

**Allen TOWNSEND and T & T Guns and Ammo, Inc., Appellees (Defendants).**

**No. 04–239.**

Supreme Court of Wyoming.

July 29, 2005.

Representing Appellants: Paul J. Drew of Drew Law Office, P.C., Gillette, Wyoming.

Representing Appellees: Sean P. Durrant of Palmerlee & Durrant, LLC, Buffalo, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellants, Matt and Pamela Beck (the Becks), challenge the judgment of the district court contending that it erred by, in effect, instructing the jury that it must find "solid proof" of trespass in order to award damages for trespass, when the actual burden of proof was a preponderance of the evidence. The Becks also contend that the district court erred in granting summary judgment in favor of Appellees, T & T Guns and Ammo, Inc. (T & T) and Allen Townsend (Townsend), on the Becks' claim for punitive damages as an element of the underlying tort claim. We will affirm.

### ISSUES

[¶ 2] The Becks raise these issues:

A. Did the trial court err by instructing the jury that it must find "solid proof" of trespass to award damages?

B. Did the trial court err by granting summary judgment against [the Becks] on their claim for punitive damages as an element of the underlying tort claims?

T & T enlarges on those issues as follows:

A. Whether [the Becks'] challenge of the jury's verdict for the first time on appeal is untimely, procedurally flawed and, therefore, fails.

B. Whether [the Becks'] claim of error against the district court is procedurally flawed and, therefore, fails because the additional instruction requested by [the Becks] was not tendered to the trial court in writing.

C. Whether the pattern jury instructions approved by the trial court and parties adequately advised the jury of the applicable law as to the burden of proof to be applied.

D. Whether the district court had the authority to grant partial summary judgment as to [the Becks'] claim for punitive damages.

### FACTS AND PROCEEDINGS

[¶ 3] There are only a few facts that are pertinent to the issues on appeal, however, we will set out some additional facts in order to provide background and context for the issues. The Becks have lived on a piece of property they own near Rozet, in Campbell County since 1988. T & T has operated a shooting range on its adjoining property since 1974. The shooting range is located so that it is plausible that bullets might stray onto the Becks' property. In fact, the Becks claim that routinely happens, and that is the reason they brought this litigation to the district court. The Becks sought to enjoin Townsend from operating the shooting range on the basis that it was a nuisance, as well as an award of damages for trespass (i.e., for the trespass of bullets onto their property).

[¶ 4] Both matters were tried simultaneously. The nuisance issue was tried only to the district court sitting in equity, and the trespass portion of the complaint was tried to a jury. The trial court found that the shooting range was not a nuisance, the jury found there was no trespass, and the trial court granted a partial summary judgment in favor of T & T as to the Becks' claim for punitive damages as an element of both nuisance and trespass.

[¶ 5] The central issue in this appeal arises because during its deliberations the jury asked this question:

On Jury Instruction 6. If we cannot find solid proof of trespass, can we award damages.

The trial court simply wrote the answer "No" on the same piece of paper used by the jury for its question and returned it to the jury. At the time the trial court answered the question, the attorneys for the parties were not present in the courtroom. However, the trial court informed the attorneys by telephone of the question from the jury and that he intended to answer the question "No." Counsel for the Becks did not object at that

time, although, as set out more fully below, he did object upon his arrival at the courthouse, and the objection was made before the jury completed its deliberations. The trial court also asked the attorneys to return to the courthouse at that time, as the jury's verdict was expected imminently.

[¶ 6] The jury was given Instruction No. 6 which provided:

In this action, the plaintiffs have the burden of proving by a preponderance of the evidence the following:

(a) That the defendant trespassed or caused a trespass or trespasses upon the land of the plaintiffs; and,

(b) That the plaintiffs were damaged by the acts of the defendant.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence bearing upon that issue regardless of who produced it.

[¶ 7] "Preponderance of the evidence" was defined in Instruction No. 7:

"A preponderance of the evidence" is defined as the amount of evidence, taken as a whole, which leads the jury to find the existence of a disputed fact is more probable than not. You should understand that "a preponderance of the evidence" does not necessarily mean the greater number of witnesses or exhibits.

[¶ 8] The jury was also given Instruction No. 11:

There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case. One is direct evidence—such as the testimony of an eyewitness. The other is indirect or circumstantial evidence—the proof of a chain of circumstances pointing to the existence or nonexistence of certain facts.

The law makes no distinction between direct and circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.

[¶ 9] The first question on the verdict form was this: "1. Have Plaintiffs proved by a preponderance of the evidence that Defen-

dant has trespassed?" The jury answered that question, "No."

[¶ 10] After the attorneys for the parties returned to the courthouse, the Becks' attorney initiated this discussion:

THE COURT: We're here in chambers. Here's Paul's question before we bring the jury back, Paul.

MR. DREW: Okay. My concern, if I understand the question as it was read over the phone, was—from the question from the jury was, do they have to have solid proof of trespass to award damages. My concern is that—

THE COURT: I need—I need the—I need you to get the question back from the jury. We need to look at their question one more time. Okay.

(off the record briefly.)

THE COURT: Okay. Here's what the question says: If we cannot find solid proof of trespass, can we award damages?

MR. DREW: I guess my concern is that solid proof is not, in fact, the—the standard. It's preponderance of the evidence and if, in fact, they mean to dispose of the preponderance problem by saying it is solid proof or not, it's not the standard.

THE COURT: Okay. Mr. Durrant.

MR. DURRANT: Well, I agree it's not the standard but, you know, they're not—I don't think they're using the proper term of art and I'm sure that—I don't know how you typically do that but—

THE COURT: Well, the question is could the—the question we need to ask [ourselves] is could the standard that the jury is supposed to apply in the jury instructions, could there be some misunderstanding about the standard, in other words, we probably ought to look at the jury instructions and see if there's any place in there that makes a reference to a burden other than the preponderance of the evidence to see if there's some way the instructions can confuse the jury as to the burden they are to apply.

MR DREW: Well—

MR DURRANT: Or the verdict form or just the instructions?

THE COURT: The verdict form, too, and the verdict form: Have plaintiffs proved by a preponderance of the evidence that the defendant has trespassed?

The test is put on each of the questions.

Have plaintiffs proved by a preponderance of the evidence that the defendants' trespass on plaintiffs' land was on or after September 18, 1998?

It seems to me that if they have answered question number one no, then they have a fair statement of the burden that they are to apply, plus the relevant definition right there in the instructions.

MR. DREW: Yes, they do, and having asked this question of—regarding a solid proof of trespass, I think the corrective action would be to send them an instruction that says, yes, we—while your question was answered in the negative, you are not to construe this to eliminate your ultimate finding to be by a preponderance of the evidence. I mean, it's—because it is a substitution of burden.

THE COURT: It may or may not be. I don't know what that means.

MR. DREW: Well—

THE COURT: It may be the way a juror asked the question.

MR. DREW: Okay.

THE COURT: That's why I say the test we're to apply is whether there's something in the instructions that could mislead the jury as to the burden that they have to apply.

MR. DREW: What I'm saying is I don't want the answer to this question to do just that.

THE COURT: What, do you don't want the answer to be—

MR. DREW: To—to mislead them as to the burden that is adequately set out in the instruction.

THE COURT: You think this answer misleads them?

MR. DREW: Well, I sure think it's got that possibility. I mean, with the solid in there just really, really kind of throws me for what is intended by it. You know, because it seems to me that there's some implied degree of proof there, which if

there is a degree of proof it's a preponderance. That's my problem.

THE COURT: Okay. I will—like I say, I will note your objection. It's on the record. It seems to me, like I say, unless there's something—and I'm fairly sure of the rule. Unless there's something we can point to in the instructions that would have misled them, then I think that the better course that I need to follow is to just assume that they have read the instructions, that they understand them and that they have followed the instructions and they want this question answered.

[¶ 11] The jury then returned its verdict as set out above.

## STANDARD OF REVIEW

[¶ 12] The standard of review applicable to the circumstances of this case is fairly clear. In *Rissler & McMurry v. Snodgrass*, 854 P.2d 69, 70–71 (Wyo.1993) we held:

The statutory directions and the court rules concerning the manner in which jury trials are to be conducted are mandatory and are for the purposes of protecting the fundamental rights of the parties, e.g. in this instance: to have only open court official contact with the jury by the court and/or counsel after submission of the case to the jury, together with the maintenance of a record on the instructions given to the jury.

The unusual aspect in this case is that the jury contact and subsequent procedure occurred with full knowledge of both counsel. Although the substance of the incident is not here pertinent, jurymen affidavits made subsequent to the incident and acknowledgements of judge and both counsel reflect that the jury requested an instruction on whether they could fix their own value, or whether they must accept a value fixed by a witness. The return message from the court provided such instruction.

If the court's instruction had been given to the jury after they had been conducted back before the court, and if it had been made a matter of the record, the requirements of the statutes and rules would have

been met, and there would be no error. However, such was not done, and even though an objection was not made thereto (in fact, there is indication to the contrary, i.e., that it was done with the approval of counsel), there was plain error in the proceedings.

"Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." W.R.A.P. 9.05. To qualify as plain error, there must be (1) a clear record of what happened at the hearing, (2) a clear and unequivocal rule of law shown to exist, and (3) the facts of the case must clearly and obviously transgress such rule. *Mason v. State,* 631 P.2d 1051, 1057 (Wyo. 1981); *Westmark v. State,* 693 P.2d 220 (Wyo.1984). We have here a clear record of what happened procedurally (part of such clear record is the fact that the occurrence was not made a part of the trial record). The applicable statute and rule are noted, and they were clearly transgressed.

Agreement to the procedure by appellant's counsel may be suggested here. Parties to a legal contest may stipulate and agree to many aspects thereof, but we cannot give approval or effect to such when the agreement is to disregard or circumvent the specific requirement of a statute or rule.

[¶ 13] In *Carlson v. Carlson,* 888 P.2d 210, 212–15 (Wyo.1995) we commented at length on this subject:

At the hearing on the *Motion for New Trial,* it was revealed that the jury had written a note to the judge, prior to filling out the verdict form, asking whether they could write comments on the verdict form. Neither the note nor the judge's response was preserved for the record.

Several jurors testified at the hearing as to their recollections about the note and response. Although their memories differed as to the actual question asked of the judge, they did agree that their purpose was to find out if they could "add something" to the verdict form. The "something" appears to have been their desire to make sure appellant would be reimbursed for improvements to the farm. The jury foreman, who wrote the note, testified that it said "may we add comments to the verdict form?"

During the hearing on the Motion for New Trial, the trial judge agreed with the jury foreman as to the substance of the note. Further, he indicated that his written response was "fill out the verdict form." There was no consensus among the jurors who testified as to whether they recalled a written response or a verbal response through the bailiff, nor did they agree on the precise wording of the response. The general sense of their recollections as to the response, however, was that they could not write comments on the jury form.

Before analyzing these issues under relevant statutes and case law, it is appropriate to address the concepts of "plain error" and "harmless error." Appellant characterized the facts of this case as demonstrating plain error because this court's prior requirements for the doctrine's application are met: (1) a clear record of what happened at the hearing; (2) a clear and unequivocal rule of law shown to exist; and (3) the facts of the case must clearly and obviously transgress such rule. *Rissler & McMurry v. Snodgrass,* 854 P.2d 69, 71 (Wyo.1993); *Mason v. State,* 631 P.2d 1051, 1057 (Wyo.1981). While this may or may not be true, it is irrelevant. The plain error doctrine merely allows a reviewing court to address issues that were not brought to the attention of the trial court. Wyo.R.Evid. 103(d); Wyo. R.App.P. 9.05; *Armstrong v. State,* 826 P.2d 1106, 1115 (Wyo.1992). In the instant case, the alleged error was not only brought to the attention of the trial court, it formed the basis for the *Motion for New Trial.* Plain error analysis is not necessary.

Wyo.R.Civ.P. 59, guides the trial court when a motion for new trial has been filed:

(a) Grounds—A new trial may be granted to all or any of the parties, and on all or part of the issues * * *. *Subject to the provisions of Rule 61,* a new trial

may be granted for any of the following causes:

(1) Irregularity in the proceedings of the court, jury, referee, master or prevailing party, or any order of the court or referee, or abuse of discretion, *by which the party was prevented from having a fair trial.*

(Emphasis added).

Wyo.R.Civ.P. 61, in turn, is entitled "Harmless Error." It reads as follows:

No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

(Emphasis added).

It follows that, under the harmless error rule, even if this court were to find error by the trial court, such error would not require reversal unless it "prevented a fair trial," was "inconsistent with substantial justice" or affected the "substantial rights of the parties." Given the trouble and expense of another retrial, for both the parties and the court, and given the public policy favoring the finality of judgments, it is not surprising that the court rules require such a showing of prejudice.

Appellant's argument rests in Wyo. Stat. §§ 1–11–205(a)(vii) and 1–11–209 (1988), and in this court's recent ruling in *Rissler,* 854 P.2d at 71. It is true that in *Rissler,* this court reversed a jury verdict because the trial court's failure to abide by these statutes was found to be plain error. But before we distinguish that decision from the facts of this case, it may be helpful to address the rules and statutes dealing with jury instructions.

Wyo. Stat. § 1–11–205(a) (1988) provides in relevant part as follows:

(v) When the evidence is concluded, and either party desires special instructions to be given to the jury, the instructions shall be reduced to writing, numbered and signed by the party or his attorney asking the same, and delivered to the court;

(vi) Before argument of the cause is begun, the court shall give such instruction of the law to the jury as may be necessary. The instructions shall be in writing, numbered and signed by the judge;

(vii) Where either party asks special instructions to be given to the jury, the court shall either give such instructions as requested, give the instruction with modifications, or refuse to give them. The court shall mark each instruction offered so that it shall appear which instructions were given in whole or in part, and which were refused, so that either party may except to the instructions as given, refused or modified. All instructions given by the court together with those refused shall be filed as a part of the record.

Wyo.Stat. § 1–11–209 (1988) reads as follows:

After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given. The court may give its recollection as to the testimony on the points in dispute, in the presence of or after notice to the parties or their counsel.

Finally, Wyo.R.Civ.P. 51, reads as follows:

(a) General instructions—At any time the court may give the jury such general instructions as to the duties and functions of the court and jury, and the manner of conducting the trial, as it may deem desirable to assist the jury in performing its functions. Such instructions, exclusive of rulings which are recorded

by the court reporter for inclusion in any record, shall be reduced to writing, numbered and delivered to the jury with the other instructions and shall be a part of the record in the case.

(b) Further instructions; objections— At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury. Before the argument of the case to the jury has begun, the court shall give to the jury such instructions on the law as may be necessary and the same shall be in writing, numbered and signed by the judge, and shall be taken by the jury when it retires. No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection. Opportunity shall be given to make the objection out of the hearing of the jury.

The official comment following Rule 51 explains that it "states the substance of § 1–11–205(a)(v) and (vi)."

These statutes and rules concern only certain defined communications between judge and jury:

1. Special instructions desired by a party [WYO.STAT. § 1–11–205(a)(v) and (vii)].

2. Such instructions of the law as may be necessary or requested by a party [Wyo. Stat. § 1–11–205(a)(vi); Wyo. R.Civ.P. 51(b)].

3. Jury disagreement as to testimony [Wyo. Stat. § 1–11–209].

4. Jury requests to be informed as to any part of the law arising in the case [Wyo. Stat. § 1–11–209].

5. General instructions as to the duties and functions of the court and jury, and the manner of conducting the trial [Wyo. R.Civ.P. 51(a)].

With the exception of the provision allowing the trial court to address the jury upon its request concerning disputed testimony, the balance of these provisions specify communications involving "instructions." In Wyoming, the term "instructions" has been defined as "directions in reference to the law of the case guiding the jury in arriving at correct conclusions." *Gale v. Kay,* 390 P.2d 596, 600 (Wyo.1964). The reversal in *Rissler* was precisely because an instruction on the law of the case was given without following the mandates of Wyo.Stat. §§ 1–11–205(a)(vii) and 1–11–209, with resultant prejudice.

The "issue" now facing the court is actually two "issues": the status of communications between judge and jury that do not involve instructions on the law, and whether the harmless error doctrine applies to such communications. The parties have pointed out in their briefs the lack of unanimity nationwide on these questions. Many courts have found any communication between a judge and a deliberating jury that is made off the record and outside counsels' presence to be reversible error. *See, e.g., Danes v. Pearson,* 6 Ind. App. 465, 33 N.E. 976 (1893); *Hastings v. Top Cut Feedlots, Inc.,* 285 Or. 261, 590 P.2d 1210 (1979); *Argo v. Goodstein,* 424 Pa. 612, 228 A.2d 195 (1967). Other courts have refused to reverse absent prejudice, or have identified an area of "administrative directives" by the court that are not considered to be "instructions." *See, e.g., Sanders v. Buchanan,* 407 F.2d 161 (10th Cir.1969); *Gen. Motors Corp. v. Walden,* 406 F.2d 606 (10th Cir.1969); *Dixon v. Southern Pac. Transp. Co.,* 579 F.2d 511 (9th Cir.1978); *People in the Interest of E.S.,* 681 P.2d 528 (Colo.App.1984); *Commonwealth v. Bradley,* 501 Pa. 25, 459 A.2d 733 (1983) (**overruling** *Argo* ); *Tjas v. Proctor,* 591 P.2d 438 (Utah 1979).

This court agrees with the latter cases that the better approach is to recognize the concept of "administrative directives," and to allow trial courts to communicate with a deliberating jury in a less formal manner when such communication does not concern the matters covered in the statutes and court rules cited above. Further,

the court holds that harmless error analysis is the appropriate measure for the review of such communications. As an aside, it should be pointed out that this analysis may be more stringent in criminal cases than in civil cases. See John P. Ludington, Annotation, *Postretirement Out-of-Court Communications Between Jurors and Trial Judge as Grounds for New Trial or Reversal in Criminal Case*, 43 A.L.R.4th 410 (1986); Annotation, Russell J. Davis, *Propriety and Prejudicial Effect, in Federal Civil Cases, of Communications Between Judge and Jury Made out of Counsel's Presence and After Submission for Deliberation*, 32 A.L.R.Fed. 392 (1977). So long as no party suffers prejudice thereby, the interests of judicial economy and common sense suggest that a trial judge should be allowed to exercise discretion in communicating with a jury on administrative matters in an efficient and reasonable manner.

As stated earlier, these issues now come before this court in the form of an appeal from the denial of a motion for a new trial. Trial courts have broad discretion when ruling on a motion for a new trial, and they will not be reversed absent an abuse of such discretion. *Cody v. Atkins*, 658 P.2d 59, 64 (Wyo.1983). The party seeking reversal has a heavy burden to show an abuse of discretion; indeed, he must show that a different result would have been obtained absent the abuse. *Walton v. Texasgulf, Inc.*, 634 P.2d 908, 912–13 (Wyo. 1981). An abuse of discretion occurs when the court could not reasonably conclude as it did. *Martinez v. State*, 611 P.2d 831, 838 (Wyo.1980).

In the case now before the court, the issue is whether the trial court, upon hearing the motion for new trial, could reasonably find that the communication between judge and jury did not affect the outcome of the trial. We are convinced that the trial court was correct, and that no error occurred. While the better practice would be to have such communications in counsels' presence, and to preserve both the jury question and the response, even when the mandatory statutes and rules do not apply, a sufficient record exists in this case

from which to determine the nature of the communication. The trial court's response was not an instruction on the law, and was, therefore, outside the parameters of the cited statutes and Wyo.R.Civ.P. 51. Further, no version of either the question or the response, as evidenced by the testimony at the hearing, was substantially prejudicial to any of the parties.

[¶ 14] The circumstances of this case are very much akin to those found in *Beck v. Wessel*, 90 S.D. 107, 237 N.W.2d 905, 908–9 (1976). There, the trial court answered a jury question about liability insurance "No," without observing the formalities required by governing South Dakota law. The Supreme Court of South Dakota held:

This case was tried to a jury at the courthouse in Mound City, South Dakota. Instructions were given to the jurors by the court and they began their deliberations at approximately 3:55 p.m. on May 16, 1974. At approximately 4:15 p.m. the jury sent a note to the judge asking, "Can you tell us the amount of insurance each party has?" The attorneys for the parties were not in the courtroom, having apparently adjourned to one of the local business establishments to await the verdict. Without attempting to locate the attorneys, the judge simply wrote "No" on the same piece of paper as the inquiry and returned the note to the jury room.

Defendant argues that this was error and that because of it a new trial must be granted. He contends that the judge's actions in answering the note were contrary to SDCL 15-6-51(a). The sixth paragraph of that section is the one which is relevant and it reads as follows:

"After the jury have retired for deliberations if there be a disagreement between them as to any part of the testimony or if they desire to be informed of any point of law arising in the case, they may require the officer to conduct them into court. Upon their being brought into court the information required, if given, must be given in the presence of, or after notice to the parties or counsel, and the instruction given shall be taken down by the court reporter."

There is no doubt that in a technical sense the court erred in answering the note sent by the jury without consulting counsel and following the other procedures set out above. If the jury had asked for the additional instruction on the law of the case or for an explanation of an instruction already given, we might be disposed to remand for a new trial.

Here, however, the situation was quite different. The jury was inquiring about the amounts of liability insurance owed each party. This was not their concern in deliberating on the questions of liability and damages. Had counsel or any other of the witnesses mentioned liability insurance during testimony or arguments, a mistrial would probably have had to be declared. *Behrens v. Nelson*, 1972, 86 S.D. 312, 195 N.W.2d 140. In the instant case one or more members of the jury apparently raised the possibility that the parties were insured. The judge understandably felt when he received the jury's note that it was necessary to get the jury away from the issues of liability insurance and back onto the issues of liability and damages.

We hold that while the judge erred in not consulting counsel, the error was not prejudicial in this case and does not merit a reversal. His "No" to the question was the only answer that could have been given under the circumstances. He certainly could not have answered "yes" and revealed to the jury the limits of liability insurance policies involved. Indeed, if he had consulted counsel and called the jury back into open court to admonish them not to consider liability insurance, he may well have compounded the problem by making a much larger issue of liability insurance in the minds of the jury. In the absence of other evidence, we cannot say that the judge's error was prejudicial and we decline to remand for a new trial. A conference between the judge and all the attorneys could not have come up with a better answer than the simple "No" which was sent back to the jury.

## DISCUSSION

### Answer to Jury's Question

■ [¶ 15] The Becks contend that the district court's answer to the jury's question told the jury that, "If you cannot find solid proof of trespass, you cannot award damages." Continuing, they contend that this creates two problems. First, it creates an obvious conflict in the instructions. Second, there is no instruction explaining what "solid proof" is and, therefore, the jury was allowed to apply the "solid proof" standard in their wholly unfettered discretion.

[¶ 16] Given the circumstances we have set out in detail above, we cannot agree that the trial court's action constitutes reversible error requiring a new trial. Although it is somewhat a closer question, like the South Dakota case cited above, it would have been difficult to come up with a better answer than "No." Here, the trial court did consult with counsel by phone, and on the record, the Becks' attorney did not object to the trial court's proposal to simply answer the question with a definitive "No," leaving no room for further jury confusion or undue emphasis on any particular instructions. The question gave no indication that the jury was confused about what "preponderance of the evidence" meant, and the jury instructions bear out that the possibility for confusion was inconsequential. It is evident that the jury may have felt some sympathy for the Becks' problem and sought to ask if it could award some damages, even though the proof offered by the Becks did not meet the specific burden placed on them. Of course, better practice would have been to have called counsel back to the courthouse and gone through the same process that was gone through after the fact. And, perhaps, an equally good answer would have been to tell the jury to re-read all the instructions. However, it would constitute an elevation of form over substance to discern prejudice and reversible error in these circumstances. We decline to reverse the district court's judgment on this basis.

### Summary Judgment on Punitive Damages

■ [¶ 17] The Becks contend that this Court's jurisprudence is clear that punitive damages are an element of a claim or cause of action and not a separate claim. *Errington v. Zolessi*, 9 P.3d 966, 972 (Wyo.2000) and

*see Sears v. Summit, Inc.,* 616 P.2d 765, 770 (Wyo.1980). Although better practice again would counsel that the trial court should have reserved ruling on the partial summary judgment until it had heard all the evidence, there is no indication that it prevented the Becks from presenting evidence to the jury that was pertinent to their claim and their damages. Although we will not set out the evidence in detail, it suffices to note that the Becks did not offer evidence that would have warranted the giving of a punitive damages instruction. There can be no error with respect to the nuisance claim, because the district court found there was no nuisance. Likewise, there can be no error with respect to the trespass claim because the jury did not find that there was a trespass, much less one that was willful and wanton and otherwise calling into play punitive damages.

## CONCLUSION

[¶ 18] We hold that the trial court's actions in answering the jury's question did not constitute reversible error. Likewise, the trial court did not commit reversible error in granting summary judgment as to the Becks' punitive damages claims. The judgment of the district court is affirmed.

VOIGT, Justice, specially concurring.

[¶ 19] I agree with the result reached by the majority because I do not believe the appellants were prejudiced by the manner in which the jury question was answered. I write separately, however, because I also do not believe the majority directly identifies the district court's handling of the jury question as error. The question—if we cannot find solid proof of trespass, can we award damages?—is a question "as to any part of the law arising in the case...." Wyo. Stat. Ann. § 1–11–209 (LexisNexis 2005) requires, in part, as follows:

> After the jurors have retired for deliberation, if there is a disagreement between them as to any part of the testimony, *or if they desire to be informed as to any part of the law arising in the case, they may request the officer to conduct them to the court where information upon the matter of law shall be given.*

(Emphasis added.)

[¶ 20] It was error for the district court to respond as it did to this question about the law. An appropriate response should have been reduced to writing, and then should have been read to the jury in open court, just as any other instruction on the law would be. *Carlson v. Carlson,* 888 P.2d 210, 213–15 (Wyo.1995); *Rissler & McMurry v. Snodgrass,* 854 P.2d 69, 70–71 (Wyo.1993). Furthermore, W.R.C.P. 51(b)'s requirement that counsel object to the giving of or the failure to give an instruction before assigning error to such presupposes a reasonable opportunity to object. In the instant case, it is not reasonable to expect counsel to have been able to formulate an objection in answering the judge's telephone call. Counsel did object upon returning to the courthouse, and I would have found that objection to be sufficient.